CONTINENTAL CASUALTY COMPANY, a Corporation, Appellant, v. H. D. FARNOW and W. J. MOORE, Jr., Respondents.

No. 4619

October 30, 1963                              386 P.2d 90

*Hawkins, Cannon & Hawkins,* of Las Vegas, and *Robert E. Jones,* of Los Angeles, for Appellant.

*Morse & Graves,* of Las Vegas, for Respondents.

## OPINION

By the Court, BADT, C. J.:

This action was commenced by appellant in the court below to recover a sum of money from respondents upon a contract of indemnity executed by respondents indemnifying appellant against loss by reason of its completion bonds for the performance of certain construction contracts.

We determine in this case that as a matter of law, indemnitors indemnifying against loss the surety on a completion bond upon a construction contract had no such interest in or control over a "retent" held by a bank-mortgagee, pending expiration of statutory period for filing material and labor liens, as to make their consent to the payment of such "retent" to the surety a consideration for the surety's agreement to discharge the indemnitors from liability.

Phil Shipley and Associates, Inc., owner of a tract of land in Las Vegas, Clark County, entered into two contracts with Curlett Construction Company for the construction of a group of structures. The aggregate of the construction bonds was $541,100. The project was financed by a Las Vegas bank. Neither the construction contract nor the financing contract is contained in the record on appeal. However, uncontroverted statements contained in the briefs of the parties sufficiently indicate the particular provisions that are here involved. An indemnity bond was required, insuring the completion of the construction and the payment of all labor and material bills. Continental Casualty Company, appellant herein, executed such bond, in consideration of the execution of an indemnity contract by Farnow and Moore, respondents herein, indemnifying Continental against loss on its completion bond.

Curlett Construction Company completed its construction. Nothing in the case indicates any lack of complete performance other than failure to satisfy a group of liens of laborers and material men, identified for the most part as subcontractors. Curlett was financially unable to pay these claims. At this juncture the sum of $12,600 was still held by the bank as a "retent" against the expiration of the time when liens for labor and materials might be filed against the property. There can be no doubt that if all labor and materials claims had been paid and no further liens could be legally or effectively filed, Curlett would have been entitled to the money. This, however, was not the case. Curlett's own bookkeeper and accountant submitted a list of bills for labor and materials which were still unpaid.

The surety company (appellant) was requested to come to Las Vegas and "do something about it." Its attorney came to Las Vegas, appraised the situation, and paid these bills. The accountant's list and the canceled checks were in evidence. The bills were paid by the delivery of such checks on July 19, 1951.

There had been a meeting the day before, attended by most of the interested parties and some of their respective attorneys concerning the situation. Many pages of the record are taken up with a discussion of just what occurred at that meeting. It is contended by respondents that at such meeting they were discharged from their liability as indemnitors in consideration of their consent that the surety might withdraw from the bank the $12,600 "retent" held by such bank. This was denied. The evidence was in direct conflict. The learned district judge, before whom the case was tried without a jury, found in his written decision that there was "a release to the defendants by the payment of the $12,600 to satisfy a lien which the defendants should have had every reason in the world to question." The court's formal finding was that "defendants delivered to plaintiff the sum of $12,600 to secure the satisfaction of a mechanic's lien" pursuant to "an agreement between the parties that this payment should constitute full satisfaction of all claims by plaintiff against defendants arising by virtue of the indemnity agreements," and "constitutes sufficient consideration for the release agreement entered into between the parties." The factual dispute we do not discuss, except to note that the evidence is conclusive that the $12,600 was not paid by respondents but by the bank. Some of the witnesses did indeed accompany the surety company's attorney to the bank, but just who was present when the bank delivered the "retent" to Continental's attorney is not clear. It occurred the day before the payment of the remaining creditors. We should note that at the time there was apparently presented to the bank a resolution by the directors of Phil Shipley and Associates, Inc., agreeing that such sum might be paid.

The trial court concluded that by reason of the discharge of the indemnitors (respondents), no money was

owing to the appellant and that the respondents have judgment for their costs. Motion for amendment of the findings or, in the alternative, for a new trial was presented and denied. Appeal was taken from the judgment and from the order denying new trial.

If, as we have indicated, there was no consideration for the asserted discharge,[1] to the end that a reversal must follow, it becomes unnecessary for us to attack the issue whether there was, in fact, a discharge of the respondents, or the error asserted in denying the motion for new trial.

We think it is clear that by reason of the terms of the contract papers, the indemnitors had no claim to the "retent" and suffered no detriment by reason of their consent, if a consent was actually given by them, that it might be withdrawn and paid to the surety company.

Curlett's application for the construction bond agreed: "Fourth, to assign, transfer, and set over, and does or do hereby assign, transfer and set over to the company, as collateral, to secure the obligations herein * * * but only in event of * * * any abandonment, forfeiture or breach of said contract * * * all the rights of the undersigned in and growing in any manner out of, said contract, * * *; any and all percentages retained on account of said contract, and any and all sums that may be due under said contract at the time of such abandonment, forfeiture or breach, or that thereafter may become due."

Thus all right to the "retent" had already passed to Continental. Conceding arguendo that the idemnitors thereafter consented to Continental's withdrawing the "retent" from the bank, such consent added nothing to the Continental's absolute right to withdraw it. Thus the surety company acquired no benefit, as the payment of the money was something to which it was entitled by reason of the contract papers.

[1]Respondents do not contend that no consideration was necessary.

In short, then, respondents' consent to the payment of the $12,600 by the bank to appellant (assuming that such consent was given) and appellant's discharge of respondents from their liability as indemnitors (assuming such discharge was given) constituted neither a detriment to respondents nor a benefit to appellant. The discharge (if given) was without consideration and left the obligation of the respondent indemnitors intact. Upon the surety's paying the unpaid labor and material claims against the contractor, its judgment against the indemnitors must follow.

Nothing can be accomplished by remanding the case for a new trial. The claims paid by the appellant and for which it seeks judgment are definitely in the record. Indeed respondents at the trial did not attack any of them. Appellant waited till August 14, 1951, before giving notice to respondents of its payment of these items. Interest should run from the date of such notice.

The judgment is reversed and the case remanded with instruction to enter judgment in the sum of $41,852.44 (the aggregate, shown by appellant's canceled checks, of the amounts paid by appellant to discharge the remaining material and labor bills against the construction, after crediting the sum of $12,600 paid to appellant by the bank) in favor of appellant and against respondents, together with interest thereon from August 14, 1951, and a reasonable attorney fee to be fixed by the court.

McNamee and Thompson, JJ., concur.