GILBERT SANCHEZ, APPELLANT AND CROSS-RESPONDENT, *v.* ALFREDO ALONSO, RESPONDENT AND CROSS-APPELLANT.

No. 10537

August 14, 1980                                         615 P.2d 934

*John Sanchez,* Reno, for Appellant and Cross-Respondent.

*Daniel J. Olguin,* Reno, and *C. Frederick Pinkerton,* Reno, for Respondent and Cross-Appellant.

---

[1]The Chief Justice designated HON. DAVID ZENOFF, Senior Justice, to sit in this case in the place of the HON. E. M. GUNDERSON, Justice. Nev. Const. art. 6, § 19; SCR 10.

## OPINION

By the Court, MANOUKIAN, J.:

In this appeal and cross-appeal from a judgment in favor of appellant, we recognize two issues as having merit. They are: (1) Whether the damages awarded were inadequate as a matter of law; and (2) Whether the trial court erred in awarding attorney's fees to appellant.

In 1972, appellant Sanchez, John Sankovich and Art Fife formed a partnership called Esquire Properties. Sanchez acquired Fife's interest two years later. Dr. Edwards joined the partnership in 1974 as a limited partner. Each of the three partners owned a one-third interest although Dr. Edwards would only make a contribution of $50,000 above the original investment. The assets of the partnership consisted of property on Washington Street in Reno.

The partnership decided to construct an office building on the Washington Street property in 1974. Appellant obtained an interim loan from the First National Bank in the amount of $500,000 and signed on behalf of the partnership. Due to a poor occupancy rate, appellant was unable to obtain permanent financing.

Appellant also owned Sanchez Construction Company which was to build the office building and to receive ten percent of construction costs. The profit was to be $65,000 on the $650,000 building. Appellant made advances on behalf of the partnership and was to receive one-third contributions from each of the two other partners.

In March of 1976, appellant desired to sell his interest and offered to sell to Sankovich for $80,000 and the assumption of all debts. The sale did not materialize. Sankovich, the accountant for the partnership, mentioned the opportunity to another client, respondent Alonso. Respondent's attorney would later inform appellant that respondent was interested.

Appellant testified that he offered respondent the same terms as were offered to Sankovich. After apparently clearing up some misunderstandings as to how much was owed to the bank on the loan, respondent asked his attorney to draw up the

papers. Because he was busy, respondent's attorney purportedly asked appellant's attorney to prepare the papers. Due to some construction problems, the sale price was reduced to $50,000. A promissory note reflecting this amount with twelve percent interest was drafted as were an assignment of appellant's interest in the partnership and an agreement by respondent to assume underlying debts.

When the papers were sent to respondent, he asked his attorney to make several changes.[1] The interest rate was reduced to nine and one-half percent per annum and the $10,000 owed to Sanchez Construction was struck. Other wording of the agreement was modified. After the note, assignment, and agreement were signed, respondent left for Spain on June 25 to attend to his deceased father's estate matters.[2] No payments have been made according to the agreement. Appellant filed an action only on the $50,000 note on June 29, 1976, the expiration date of the thirty day note. Respondent answered claiming that appellant had misrepresented that he had full title to the Washington Street property. Respondent also alleged that appellant failed to inform respondent that there was an IRS lien and a lien by a subcontractor on the property. Respondent counterclaimed on these bases and also on the basis that appellant had represented that Dr. Edwards and his wife were no longer involved in the partnership and that respondent and Sankovich were to acquire one-half interest each in the property.

In October of 1976, appellant also filed suit on the agreement whereby he was to be indemnified by Sankovich and respondent against construction liabilities.[3] The total against which appellant was indemnified was $133,324.65. At the trial on the consolidated actions, appellant stated that he was unaware of the IRS lien. Sankovich, appellant's accountant, had allegedly failed to file tax returns for past years. Additionally, any variance between the actual amount owed to creditors and the amount listed in the agreement were due to Sankovich's failure to update the list.

The amount claimed by appellant in the complaints was

---

[1] Respondent's attorney testified at trial that he made changes for respondent but that he was not acting as an attorney at that time. He stated that he was merely acting as a translator in incorporating changes because respondent spoke or read little English.

[2] Respondent argued that the documents were to go through an escrow as if this was a sale of real property. The jury apparently gave no credence to this theory.

[3] John Sankovich did sign the indemnification agreement.

$50,000 on the note and $133,324.65 on the agreement. Sankovich was a named defendant, as he had signed the indemnification agreement, but subsequently filed bankruptcy and was dismissed from the suit. The jury rendered a verdict for appellant in the amount of $91,662.32, exactly one-half of the claimed amount. The trial court concluded that $50,000 of the award represented the amount due on the note and the balance was the amount on the agreement. Thus, the court allowed appellant attorney's fees on the note in the amount of $10,000.

Appellant appealed and now argues that he should have recovered the entire amount alleged. Respondent cross-appealed claiming appellant breached a warranty of title and also was unable to convey any interest in the property. He also claims that appellant was not entitled to attorney's fees on the note as the jury award could have been attributed just as logically to a recovery on the indemnification agreement. We find respondent's contentions to be without merit and affirm as modified.

*1. The Alleged Inadequacy of the Verdict.*

According to the agreement, Sankovich and respondent agreed to indemnify appellant against the payment of creditors and the respective amounts as listed and attached to the agreement. The agreement provided that Sankovich and respondent would "jointly and severally keep and save harmless and indemnify [appellant] of, from and against the payment of any and all legal liabilities incurred during and for the construction of [the Washington Street building]. . . ." This included the amount owed to First National Bank and to the listed contractors and materialmen along with interest and penalties due. Respondent had the right to settle or dispute claims and Sankovich and respondent were to defend any suits by creditors against appellant.

Appellant argues that the verdict of $91,662.32 did not adequately compensate him for his losses. Because this was an agreement to indemnify, appellant contends, he need not demonstrate actual damages in order to recover. In the context of this case, we agree.

This case involves an indemnification against all liabilities. Here, the indemnitee has a complete right of action when he becomes legally liable for damages. Jones. v. Child, 8 Nev. 121, 125 (1872). *See* Continental Casualty Co. v. Farrow, 79 Nev. 428, 386 P.2d 90 (1963). The cause of action arises where,

as here, the indemnitor fails to perform in accordance with the contract. Respondent and Sankovich were to indemnify appellant against any liabilities and would also have to defend actions against appellant. The fact that a review of the record reveals that appellant had only paid ten of the seventeen listed creditors,[4] is irrelevant. Although these amounts, which included interest for some, totalled $36,599.83, appellant was not required to prove that any payment had been made. Under the instant indemnity contracts, the right of action accrued in favor of the appellant-indemnitee upon a demand from the creditors, whether or not appellant had sustained actual damage at the time. *See* Jones v. Child, 8 Nev. at 125; Levin v. Friedman, 317 A.2d 831, 834–35 (Md.App. 1974). This action, premised on the indemnity agreement, was appropriately brought prior to the time any judgment was rendered against appellant. K & S Oilwell Service, Inc. v. Cabot Corporation, Inc., 491 S.W.2d 733, 739 (Civ.App.Tex. 1973). The trial court's determination would contravene the policy of the courts to settlement and reduce litigation. *Id.*

It is clear that the jury found in favor of appellant and against respondent. And, because the jury awarded exactly one-half of the amount claimed, it is equally clear that the jury thought that Sankovich, the other party to the agreement, was responsible for the other half.[5] But Sankovich and respondent agreed jointly and severally to indemnify appellant from payment of liabilities. The fact that Sankovich was dismissed as a defendant did not relieve respondent of total liability. We conclude that the verdict below was in appellant's favor and that

[4]At trial, appellant demonstrated that he had paid $6,422.09 to Monarch Carpet; $8,206.24 to Earl Games; $384.00 to Clyde Robad's; $13,231.31 to I. Christensen Co.; $2,000.00 to C.B. Concrete Co.; $3,663.74 to Berger Building Supply; $2,500.00 to Western Crane; $20.95 to Re. Incorporated; $31.50 to Reno Blueprint; and, $140.00 to Able Steel. During oral argument, counsel for appellant indicated that $15,408.57 had also been paid to Anvil Ornamental, one of the listed creditors.

[5]The jury was made aware of the fact that John Sankovich was a maker on the note and would have been a defendant had he not filed in bankruptcy. Furthermore, close scrutiny of the record indicates that Sankovich was responsible for several misstatements to respondent as to the interest conveyed by appellant. Sankovich also was apparently responsible for the IRS liens as he had not filed tax returns for appellant when appellant was informed that Sankovich had. Finally, Sankovich prepared the list of creditors attached to the agreement. Appellant gave Sankovich the bills from creditors when the building was completed and Sankovich did not update the amounts owed to include interest. It is obvious that the jury desired that respondent be responsible for only half of the amount claimed even though the court concluded that $50,000 was for the note and the balance for the breach of the contract. This the jury was not authorized to do.

respondent is fully liable on the note and agreement. This liability amounts to $50,000.00 on the note and $133,324.65 on the creditors' claims. The judgment should be modified accordingly. NRS 2.110.

2. *Award of Attorney's Fees.*

Because the jury only allowed $91,662.32 as damages, respondent claims that the trial court erred in determining that $50,000 represented the amount due on the note. Due to this determination, the court allowed attorney's fees of $10,000 on the note which had provided for such fees.

Respondent first argues that NRS 18.010(2) specifically precludes the award of attorneys' fees upon recoveries greater than $10,000. Respondent overlooks NRS 18.010(5) which provides that subsection 2 does not apply "to any action arising out of a written instrument or agreement which entitles to the prevailing party an award of reasonable attorney's fees." The note in question so provided.

Respondent next argues that the trial court improperly allocated the damage award to the note. We find no basis for the allocation by the court. Nevertheless, due to our holdings that the jury returned a verdict for appellant and that appellant is entitled to recover on the note, attorney's fees were properly awarded. There is no contention that the award was unreasonable.

We find that the jury returned a verdict in appellant's favor and that appellant may recover the $50,000 on the note, $36,599.83 as proven damages on the indemnity agreement, and we ratify the indemnity provision. Respondent remains responsible on the agreement's indemnity provision. Interest on the note at 9½ percent per annum remains at $6,194.52, prior to the entry of judgment. Interest on the $36,599.83 will commence from the time of judgment by the lower court as this was not a liquidated amount. NRS 99.040 (amended in 1979 Nev. Stats. ch. 448, § 4, at 830). *See* Paradise Homes v. Central Surety, 84 Nev. 109, 437 P.2d 78 (1968). As to creditors who have not asserted claims, when asserted, respondent shall be obligated to pay subject, of course, to his right to dispute and defend any of the claims, and the trial court shall compute interest in accordance with law. Attorney's fees and costs will remain as awarded by the trial court. Remaining issues are without merit.

This matter is remanded to the district court to enter judgment in favor of Sanchez in accordance with this opinion.

Mowbray, C. J., and Thompson, Gunderson, and Batjer, JJ., concur.