**Marilyn A. HAMLIN, individually and as Administratrix of the Estate of Calvin Harold Hamlin, deceased, Appellant (Plaintiff),**

v.

**TRANSCON LINES; Russel N. Holmes; Raymond E. Befus, in his capacity as Administrator of the Estate of Gerald A. Befus, deceased; and the State of Wyoming, Appellees (Defendants).**

**Raymond E. BEFUS, in his capacity as Administrator of the Estate of Gerald A. Befus, deceased, Appellant (Defendant),**

v.

**TRANSCON LINES; Russel N. Holmes; the State of Wyoming, Appellees (Defendants),**

v.

**Marilyn A. HAMLIN, individually and as Administratrix of the Estate of Calvin Harold Hamlin, deceased, Appellee (Plaintiff).**

Nos. 83–221, 83–222.

Supreme Court of Wyoming.

June 18, 1985.

**1140**

Before THOMAS*, C.J., and ROSE, ROONEY**, BROWN and CARDINE, JJ.

## ORDER DENYING PETITION FOR REHEARING

THOMAS, Chief Justice.

This matter comes here upon the State's Petition for Rehearing, even though the State is the successful party in this appeal. While it is indeed unusual for the successful party to petition this Court for a rehearing, we find the State to have misconstrued our opinion, and, because it is the duty of the office of the Attorney General to administer the Wyoming Governmental Claims Act, we will respond to the petition so that all misconceptions or similar misunderstandings may be laid to rest.

The Court, having carefully considered said Petition, and being fully advised in the premises, finds that the State has failed to demonstrate that this Court has in any way misinterpreted the Wyoming Governmental Claims Act, §§ 1–39–101 through 1–39–119, W.S.1977, 1984 Cum.Supp., and its relation

to Art. 10, § 4 of the Wyoming Constitution and § 27–12–103(a) of the Wyoming Worker's Compensation Act, §§ 27–12–101 through 27–12–804, W.S.1977.

The State of Wyoming takes the position that this Court's opinion frustrates the purposes of the Governmental Claims Act by denying aid to those injured by public employees unless such injured person first obtains and satisfies his or her judgment against the negligent employee. It is difficult for this Court to understand how the State's attorney could possibly read the Court's opinion to hold for such a conclusion. The State's interpretation conflicts with the explicit language of the Court's opinion which recognizes that the Governmental Claims Act authorizes a direct claim against the State in favor of all persons injured by negligent State workers except in those situations where the injured party is also an employee of the State and covered by worker's compensation. The Court's opinion says:

> "* * * [B]ecause the legislature felt that the citizens of Wyoming would best be served by structuring a method whereby they could, in specific instances, bring tort and contract actions against the State and its employees—it enacted the Wyoming Governmental Claims Act. As noted, the purpose of the Act is to 'balance the respective equities between *persons injured* by governmental actions and the taxpayers' (emphasis added). *Thus the legislature's intended purpose is to waive sovereign immunity of the State and its employees in tort* and contract—in those certain specified instances which are contemplated by the Act and only to the extent contemplated.*" (Emphasis added.) *Hamlin v. Transcon Lines*, Wyo., 697 P.2d 606, 612–613 (1985).

The Court's opinion, dated April 1, 1985, makes it clear that in every instance in which the injured party is not a governmental employee covered by the Worker's Compensation Act, he or she is authorized

---

* Became Chief Justice January 1, 1985.

** Chief Justice at time of oral argument.

to bring an action in tort directly against the state or any other governmental entity by which the tortfeasor is employed. Such a plaintiff is not only entitled to seek a judgment against the State or other governmental entities for the negligence of their employees, but the plaintiff may also proceed to obtain satisfaction of that judgment in full from the resources of the governmental entity which employed the tortfeasor. The Governmental Claims Act and the doctrine of respondeat superior compel this conclusion.

■ As the Court's opinion clearly holds, it is only in those situations where the injured governmental employee-plaintiff is covered by worker's compensation that the exclusive-remedy provisions of the worker's compensation laws preclude a direct action in tort against the employer-governmental entity. The Worker's Compensation Act and the waiver-of-immunity provisions of the Governmental Claims Act do, however, permit the injured governmental employee to structure a claim against his or her co-employee provided the claimant can prove culpable negligence. Section 27–12–103(a), W.S.1977. Thus, the very narrow fact situations to which the holding of the Court's opinion in the case at bar would apply—except where the plaintiff chooses to bring suit against the governmental employee only—are those in which the injured person is an employee of a governmental entity and is covered by worker's compensation. In these circumstances, as the Court's opinion specifically holds, the employee does not have a cause of action against the governmental-entity employer because of the exclusive-immunity provisions of the worker's compensation law, § 27–12–103(a), and for the further reason that the injured party is not a third-party beneficiary of the statutory-indemnity agreement contemplated by § 1–39–104(b), since such injured person is not one against whom "liability is alleged."

The State, in its brief in support of the petition for rehearing, strenuously objects to the Court's holding that a party injured by governmental action may assert a claim against the public employee responsible for that injury. The principal contention underlying all of the State's arguments is that the Governmental Claims Act recognizes only one claim or cause of action for the redress of governmental wrongs: namely, a claim against the governmental entity itself. The State directs our attention to § 1–39–104(a), which provides in part:

"(a) A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112."

From this it is argued that, since each of the statutory exceptions to absolute immunity cited in § 1–39–104(a) provides that the "governmental entity is liable"—no mention being made of the public employee's liability—public employees acting within the scope of their duties therefore enjoy absolute immunity from suit for any and all wrongs they commit.

■ The express language of the Governmental Claims Act itself refutes this notion. Preliminarily, we recall the elementary rule of statutory interpretation that all portions of an act must be read in pari materia, and every word, clause and sentence of it must be considered so that no part will be inoperative or superfluous. *Attletweedt v. State*, Wyo., 684 P.2d 812, 813 (1984); *Haddenham v. City of Laramie*, Wyo., 648 P.2d 551 (1982). Also applicable is the oft-repeated rule that this Court must assume that the legislature did not intend futile things. *Thomson v. Wyoming In-stream Flow Committee*, Wyo., 651 P.2d 778 (1982); *Haddenham v. City of Laramie*, supra; *Yeik v. Department of Revenue and Taxation*, Wyo., 595 P.2d 965 (1979); *DeHerrera v. Herrera*, Wyo., 565 P.2d 479 (1977); *Kuntz v. Kinne*, Wyo., 395 P.2d 286 (1964); *Brinegar v. Clark*, Wyo., 371 P.2d 62 (1962). If we were to adopt the State's reasoning that governmental employees enjoy complete immunity under the Governmental Claims Act, we would render superfluous and futile numerous sections of the Governmental Claims

Act, including the indemnification provisions of § 1–39–104(b):

"(b) *When liability is alleged against any public employee*, if the governmental entity determines he was acting within the scope of his duty, whether or not alleged to have been committed maliciously or fraudulently, the governmental entity shall provide a defense at its expense. *A governmental entity shall save harmless, and indemnify its public employees* against any tort claim or judgment arising out of an act or omission occurring within the scope of their duties." (Emphasis added.)

This section plainly recognizes that public employees may be subject to tort claims and judgments as a result of their work-related activities.

Section 1–39–116(b) provides that the *judgment* or *settlement* obtained pursuant to the Governmental Claims Act, not the Act itself, bars further action by the claimant against the responsible employee:

"(b) The judgment in an action or a settlement under this act constitutes a complete bar to any action by the claimant, by reason of the same transaction or occurrence which was the subject matter of the original suit or claim, against the governmental entity *or the public employee* whose negligence gave rise to the claim." (Emphasis added.)

The applicable statute of limitations, § 1–39–114, recognizes the validity of claims against governmental employees:

"Except as otherwise provided, actions against a governmental entity *or a public employee* acting within the scope of his duties for torts occurring after June 30, 1979 which are subject to this act shall be forever barred unless commenced within one (1) year after the date the claim is filed pursuant to W.S. 1–39–113. In the case of a minor seven (7) years of age or younger, actions against a governmental entity *or public employee* acting within the scope of his duties for torts occurring after June 30, 1979 which are subject to this act are forever barred unless commenced within two (2)

years after occurrence or until his eighth birthday, whichever period is greater. * * *"" (Emphasis added.)

Finally, § 1–39–117(b) establishes that venue for claims brought under the Act shall be in the county where the defendant public employee resides:

"(b) Venue for any *claim against* the state or *its public employees* pursuant to this act shall be in the county in which the public employee resides or the cause of action arose or in Laramie county. Venue for all other claims pursuant to this act shall be in the county in which the defendant resides or in which the principal office of the governmental entity is located." (Emphasis added.)

We cannot agree that the legislature enacted the foregoing provisions with the intent that injured citizens be forever barred from bringing claims against governmental employees.

The intent of the legislature in enacting the Governmental Claims Act appears in § 1–39–102:

"(a) The Wyoming legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity and is cognizant of the Wyoming supreme court decision of *Oroz v. Board of County Commissioners*, 575 P.2d 1155 (1978). It is further recognized that the state and its political subdivisions as trustees of public revenues are constituted to serve the inhabitants of the state of Wyoming and furnish certain services not available through private parties and, in the case of the state, state revenues may only be expended upon legislative appropriation. This act is adopted by the legislature to balance the respective equities between persons injured by governmental actions and the taxpayers of the state of Wyoming whose revenues are utilized by governmental entities on behalf of those taxpayers. This act is intended to retain any common law defenses which a defendant may have by virtue of decisions from this or other jurisdictions.

"(b) In the case of the state, this act abolishes all judicially created categories such as 'governmental' or 'proprietary' functions and 'discretionary' or 'ministerial' acts previously used by the courts to determine immunity or liability. This act does not impose nor allow the imposition of strict liability for acts of governmental entities or public employees."

The Court's opinion in this appeal makes it clear that, in adopting the Governmental Claims Act, the legislature recognized and embraced the curtailment of governmental immunity initiated by the judiciary. The legislature sought to afford a remedy to persons injured by negligent public employees, while avoiding the repeated litigation of the question of governmental immunity. In the case of the State, the legislature abolished such classifications as "discretionary" and "ministerial," previously used by the courts to determine whether governmental employees or entities were exposed to suit. The legislature expressly intended that the Act should not impose strict liability upon public employees or the governmental entities, but that all defendants should retain their tort defenses developed at common law.

To accomplish these stated purposes, the legislature granted immunity to governmental entities and their employees except for certain specified torts, § 1–39–104(a). Except for the *tortious conduct* of law-enforcement officers, all of the torts excepted from the protection of absolute immunity involve negligent conduct by public employees acting within the scope of their employment. For example, § 1–39–105 provides:

"A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any motor vehicle, aircraft or watercraft."

Thus, under § 1–39–104(a), supra, the negligent operation of an automobile by a public employee in the scope of his or her duties is tortious conduct excepted from the shield of governmental immunity whether raised by the government or the employee. The language of § 1–39–105, supra, underscores the governmental entity's exposure to suit but nothing in the statute relieves the employee from the liability imposed by § 1–39–104(a) for such tort. This reading of the Governmental Claims Act has been accepted without question by scholars since the Act's inception:

"If the suit is brought under one of the enumerated exceptions in section 1–39–105 through 112, the employee has no immunity and any defenses are grounded in the law of negligence. This lack of immunity should not be surprising, since most public employees would probably agree that they should not be treated differently from other individuals for injuries caused by such activities as driving a car, piloting an airplane, or maintaining a building or street.

"Although the employee has no immunity he is not personally liable as long as the activity was within the scope of his duties. Section 1–39–104(b) obligates the governmental entity, to provide a defense and indemnify the employee for any tort claim or judgment." Comment, *Wyoming's Governmental Claims Act: Sovereign Immunity With Exceptions—A Statutory Analysis*, 15 Land & Water L.Rev. 619, 636 (1980).

This conclusion, that public employees are susceptible to suit under the Governmental Claims Act, finds support in our decisions rendered after the adoption of the Act. *Lafferty v. Nickel*, Wyo., 663 P.2d 168 (1983); *Kimbley v. City of Green River*, Wyo., 663 P.2d 871 (1983).

Although the Governmental Claims Act permits an injured party to bring suit against the responsible governmental employee, the Worker's Compensation Act limits that right where the plaintiff is also a governmental employee eligible for worker's compensation benefits. Section 27–12–103(a) provides:

"(a) The rights and remedies provided in this act [§§ 27–12–101 through 27–12–

804] for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer making contributions required by this act, or his employees acting within the scope of their employment unless the employees are culpably negligent, but do not supersede any rights and remedies available to an employee and his dependents against any other person."

The State expresses concern that in those instances where an injured State employee, covered by worker's compensation, succeeds in obtaining judgments by establishing the culpable negligence of his fellow employee, the State will be forced to pay for the injury twice in apparent derogation of the Wyoming Constitution, Art. 10, § 4. That is, it is the petitioner's contention that the State employer would, in these circumstances, be forced to pay the claimant directly through worker's compensation benefits and indirectly through indemnification of the culpably negligent co-employee. This argument ignores the provisions of § 27–12–104(a)(i), which require the injured employee to utilize up to one-half of the proceeds obtained through litigation to reimburse the state treasury for the total amount of all benefits received:

"(a) If an employee covered by this act receives an injury under circumstances creating a legal liability in some person other than the employer to pay damages, the employee if engaged in extrahazardous work for his employer at the time of the injury is not deprived of any compensation to which he is entitled under this act. He may also pursue his remedy at law against the third person. If the employee recovers from the third person in any manner including judgment, compromise, settlement or release, the total proceeds, without regard to the types of damages alleged in the third-party action, of the recovery shall be divided as follows:

"(i) After deducting the reasonable cost of recovery or collection not to exceed one-third ($\frac{1}{3}$) of the recovery, one-half ($\frac{1}{2}$) of the remainder shall be immediately paid to the injured employee, his personal representative or other person granted the recovery and up to one-half ($\frac{1}{2}$) shall be paid to the state treasurer in reimbursement for the total amount of all awards received or in absence of a disclaimer of any unpaid balances to be received by the injured employee under this act including all monies paid to him or in his behalf, less the state's pro rata share of costs of recovery or collection. * * "

■ Finally, the Court's interpretation of the Governmental Claims Act, which acknowledges an injured public employee's right to sue his culpably negligent co-employee, does not implicate the relationship between the injured employee and his public employer and, therefore, does not violate § 1–39–119, which provides:

"The provisions of this act shall not affect any provision of law, regulation or agreement governing employer-employee relationships."

The injured plaintiff's rights, according to this Court's opinion, are co-extensive with those provided by the Worker's Compensation Act, § 27–12–103(a), supra. That is, an injured plaintiff covered by worker's compensation may undertake to establish the culpable negligence of his co-employee and, if successful, execute upon his or her judgment. The judgment debtor (the Befus estate in the case at bar) is then entitled to indemnification from the governmental entity for any loss suffered, § 1–39–104(b). The injured plaintiff's rights to compensation, however, are not directly enhanced or affected by the largess of the public treasury. He or she is entitled only to such rights as the law contemplates may be asserted by a judgment creditor against a judgment debtor in pursuit of his or her satisfaction of the judgment.

Notwithstanding the understandable desires of those who would prefer to see the governmental entity directly compensate the injured person for the wrongs of his co-employee, § 1–39–104(b) is an indemnifi-

cation provision designed to protect and hold harmless the governmental tortfeasor. The plain language of this section of the statute leads unerringly to the conclusion that it does not provide insurance that the injured plaintiff's judgment will be satisfied by the concerned governmental entity. By its terms, § 1–39–104(b) indemnifies the judgment debtor, and any enlargement of the class protected by this statute must be provided by the legislature.

 Under the law of indemnity, the government's liability as indemnitor does not arise until the indemnitee-tortfeasor has suffered loss, 2 Williston on Contracts, 3d Ed. § 403, p. 1091. The injured plaintiff—judgment creditor—has no right of action against the governmental entity pursuant to § 1–39–104(b) to satisfy his or her judgment against the tortfeasor public employee. The judgment creditor's only right of action is against the judgment debtor. Were we to ignore the provisions of the statute in the instant case by directing that the State pay the amount of the judgment regardless of the loss sustained by the tortfeasor, we would, in effect, be enhancing the rights of the injured employee with respect to his employer, the State. Since the State employee covered by worker's compensation is precluded from obtaining a judgment directly against the State, we cannot allow him to recover the amount of his judgment indirectly from the State thereby circumventing the exclusive-remedy provisions of the Constitution. The governmental employee-tortfeasor, however, can rely on the indemnification statute for protection from loss, whatever that loss might turn out to be as a consequence of the judgment creditor's pursuit of his or her rights under the judgment.

Accordingly, the Court's opinion remands this case to the district court to make factual and legal determinations as to the amount of loss sustained and sustainable by the defendant tortfeasor, from which loss or losses the indemnitor must save the indemnitee harmless under the law of indemnity. We cannot tell from the record what the Befus estate's losses either are or

might be, and this appeal is not postured in a way which asks or permits this Court to interpret the law of indemnity as regards judgment creditors versus judgment debtors who are indemnitees of third-party indemnitors; hence remand is necessary. We might say parenthetically, however, that some, but by no means all, of the relevant factors affecting the extent of the State's liability to the Befus estate include the assets in the estate subject to execution, whether the litigants have settled for a sum less than the judgment, and what losses the indemnitee might suffer in the future from which the law of indemnity provides that the indemnitee must be held harmless.

For all of the reasons set out in the Court's opinion of April 1, 1985, as further emphasized by this order, we find that the Petition for Rehearing should be denied. It is, therefore,

ORDERED that the State of Wyoming's Petition for Rehearing be, and it hereby is, denied.

ROONEY, J., filed a specially dissenting opinion.

BROWN, J., filed a dissenting opinion in which ROONEY, J., joined.

ROONEY, Justice, specially dissenting.

In addition to joining in the dissent of Justice Brown to this order, and inasmuch as the original opinion in this case is being supplemented by this order, I want to briefly note that I believe the Wyoming Governmental Claims Act should not be considered in connection with matters involving worker's compensation.

The Wyoming Worker's Compensation Act, § 27–12–101 et seq., W.S.1977, is a law governing an employer-employee relationship. It is involved in this case, and its provisions are affected by the provisions of the Wyoming Governmental Claims Act, § 1–39–101 et seq., W.S.1977, Cum.Supp. 1984. I believe this to be directly counter to the legislative intention as expressly set forth in the last section of the Wyoming

Governmental Claims Act, i.e. § 1–39–119, W.S.1977, Cum.Supp.1984, which reads:

"The provisions of this act shall not affect any provision of law, regulation or agreement governing employer-employee relationships."

Of course, the Wyoming Governmental Claims Act concerns employees of governmental agencies and § 1–39–119 is not intended to apply to the actions of such employees covered by the Act *unless* there is some other law, regulation or agreement pertaining to the employment relationship. The language of § 1–39–119 cannot be taken to be useless or without meaning or purpose. Every word, clause and sentence of a statute must be given meaning and a statute must be construed so that no part is inoperative or superfluous. *Thomson v. Wyoming In-Stream Flow Committee*, Wyo., 651 P.2d 778, 787 (1982); *Haddenham v. City of Laramie*, Wyo., 648 P.2d 551, 555 (1982). But, in construing statutes, we must presume that the legislature intended to enact legislation that is reasonable and just. *McGuire v. McGuire*, Wyo., 608 P.2d 1278, 1286, n. 10 (1980); *Ramsay Motor Co. v. Wilson*, 47 Wyo. 54, 30 P.2d 482, 485, 91 A.L.R. 908 (1934).

It is reasonable and just to assume that the legislature did not want the Wyoming Governmental Claims Act to become entwined with the Wyoming Worker's Compensation Act, and the legislature said so in § 1–39–119.

In *Board of Trustees of University of Wyoming v. Bell*, Wyo., 662 P.2d 410 (1983), we held that Bell's complaint against the University for wrongful discharge should be dismissed for lack of jurisdiction inasmuch as the complaint failed to allege the filing of a claim as required by statute. We there commented that § 1–39–119

" * * * does not serve to except claims which have their genesis in tort even though they arise out of an employment relationship. Instead this section indicates that the provisions of the statute are supplementary to others which may be provided by law, regulation or other

agreement relating to employer-employee relationships. If the tort action is brought, and it does arise out of the employment relationship, we conclude that the claims procedure of this statute must be followed." Id., 662 P.2d at 414–415.

I do not believe this language exempts torts from the provisions of § 1–39–119. Such interpretation would do extreme violence to the ordinary meaning of the words used in the statute. Bell's discharge from employment by the University did not involve the worker's compensation law or any other employer-employee law. As indicated in the quoted language from *Board of Trustees of University of Wyoming v. Bell*, supra, § 1–39–119 makes the provisions of the Wyoming Governmental Claims Act supplementary to the provisions of other laws concerning employer-employee relationships. The provisions of the other laws control and the provisions of the Wyoming Governmental Claims Act are supplementary to them.

I would grant the petition for rehearing for the purpose of receiving briefs and arguments on the new issues and matters raised in this order and in the dissents thereto.

BROWN, Justice, dissenting, with whom ROONEY, Justice, joins.

I dissented in part to the court's original opinion. My principal disagreement with the majority at this juncture is the manner in which it has disposed of the state's petition for rehearing.

I

Ordinarily a petition for rehearing is disposed of in a short, simple order, unless, of course, there is something wrong with the opinion. In this case, however, the majority vehemently maintains that there is nothing wrong with the opinion, but then uses more words than contained in the original opinion to explain why there is nothing wrong with it. The majority is originating a most peculiar procedure. A more funda-

mental irregularity, however, is the majority deciding an issue that was not appealed. The Befus estate appealed from the "Judgment entered * * * on September 21, 1983." After recitations, the remaining portion of the judgment provided:

"THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the Estate of Hamlin and the Estate of Befus recover nothing from defendant, Transcon Lines and that defendant, Transcon Lines recover from the Estate of Hamlin and the Estate of Befus its costs incurred in this action.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Estate of Hamlin recover from the Estate of Befus the sum of one hundred fifty thousand dollars ($150,000.00) along with its costs incurred."

I emphasize that this judgment does not address the indemnity issue asserted by the Befus estate in its cross-claim against the state, nor do the recitations address indemnity. I suppose that this small technicality is of no consequence to the majority since its opinion and order denying rehearing, so far as the Befus indemnity claim is concerned, is entirely advisory. I will, nevertheless, proceed like the majority has, as if the indemnity issue was appealed and that there is a proper case before this court to act upon.

In my opinion, the order exacerbates and adds to the confusion of the original opinion; it injects new issues and expands the scope of the remand. The majority seems to have doubts about its original opinion. I say this because ofttimes a flawed notion will be defended with more vigor than a correct principle because a correct principle defends itself, but a faulty notion must be defended by its proponents—first, to convince themselves, and secondly, that they may appear right in the estimation of others.

The ratio decidendi in the original opinion, so far as the Befus claim against the state was concerned, was clear and uncomplicated, that is, the Befus claim against the state failed because it did not state nor prove a cause of action. However, the majority did not stop there; it went on to write an advisory opinion and set out instructions accordingly. The problems lie within the advisory portion of the majority opinion.

In the original opinion, the majority stated:

" * * * [I]n this case there is absolutely no showing that the Befus estate has suffered any damage whatever by reason of the Hamlin verdict and judgment, and, absent proof of actual financial loss by the Befus estate, this opinion should not be read to mandate that the State of Wyoming make payment in any amount upon that verdict and judgment.

\* \* \* \* \* \*

"Accordingly, we affirm in part and reverse in part, and remand to the trial court for entry of judgment which is not inconsistent with this opinion."

In the disposition indicated above, there was not the slightest hint that upon remand an evidentiary hearing was contemplated or required.

Comes now the prolix order denying petition for rehearing and completely changes the scope of the remand. The order says:

"Accordingly, the Court's opinion remands this case to the district court to make factual and legal determinations as to the amount of loss sustained and sustainable by the defendant tortfeasor, from which loss or losses the indemnitor must save the indemnitee harmless under the law of indemnity. We cannot tell from the record what the Befus estate's losses either are or might be, and this appeal is not postured in a way which asks or permits this Court to interpret the law of indemnity as regards judgment creditors versus judgment debtors who are indemnitees of third-party indemnitors; hence remand is necessary. We might say parenthetically, however, that some, but by no means all, of the relevant factors affecting the extent of the State's liability to the Befus estate include the assets in the estate subject to

execution, whether the litigants have settled for a sum less than the judgment, and what losses the indemnitee might suffer in the future from which the law of indemnity provides that the indemnitee must be held harmless."

The trial judge is now ordered to hold an evidentiary hearing to determine: 1) the amount of loss sustained or sustainable by the defendant tortfeasor; 2) assets in the Befus estate subject to execution; 3) whether there has been a settlement for less than the judgment; and 4) future losses that may be sustained by the Befus estate. The majority, however, does not advise who should be the trier of fact.

As a result of the order denying petition for rehearing, confusion is increased geometrically. Suppose the trial court finds the defendant tortfeasor sustained a loss and/or there are assets in the estate subject to execution and/or a settlement has been made and/or the Befus estate will sustain losses in the future. What is the trial judge supposed to do with the information he receives after the evidentiary hearing? One might infer that with fortuitous findings the state will have to reimburse the Befus estate. If that is not the intent of the evidentiary hearing ordered by the majority, I see no purpose in such a hearing.

If the majority intends that Befus be indemnified, contingent only upon certain findings, then the majority will need to modify the principle of res judicata. The Befus estate made a cross-claim in the original action for indemnity against the state and apparently lost because it did not state a cause of action.

It appears that the majority is now permitting Befus to retry its indemnity case. In its order the majority tells Befus what theory of recovery it must plead, that is, that it sustained "actual financial loss," and how it can show that it is entitled to indemnity. The Befus estate failed in its first claim, but the majority seems to be allowing it a second chance to plead and prove what it should have pled and proved the first time around.

Since the original opinion and the order denying petition for rehearing are principally advisory, the court might just as well fully advise the Befus estate and those similarly situated. For example, what would be the effect of a promissory note from Befus to Hamlin in satisfaction of the judgment? What would be the effect of assigning Befus' right of indemnity? Suppose Befus borrowed money at the bank to pay the judgment and Hamlin co-signed or guaranteed the note? There may be other possible ways that Befus could satisfy the *actual financial loss* requirement imposed in the court's opinion. Why not tell Befus exactly what to do to satisfy this requirement? The court should not dole out its advice and instructions piecemeal. It might just as well go all the way in advising Befus rather than letting him guess.

II

The law in Wyoming, as a result of this case, is that a person situated in the same position as Befus has a right of indemnity against the state. Despite my dissent to the original opinion, I have a duty as a member of this court to help develop law in a reasonable, fair, logical and understandable manner. I, therefore, address the ramifications of the ratio decidendi of this case.

The original opinion of the court, according to the majority, required that the Befus estate show that it *had suffered actual financial loss* before the state was required to indemnify it. Section 1–39–104(b), W.S.1977, 1984 Cum.Supp., of the Governmental Claims Act, provides in part:

"* * * A governmental entity shall save harmless, and indemnify its public employees against any tort claim or judgment arising out of an act or omission occurring within the scope of their duties."

A more equitable, manageable and logical construction of § 1–39–104(b) would be that once a state employee has a judgment rendered against him, the State of Wyoming must assume the judgment, and thus hold the employee harmless as the Govern-

mental Claims Act provides. The state employee is not being held harmless if, before § 1–39–104(b) is triggered and comes to his aid, he is wiped out financially by executions on property, attachments on wages and hauled into court numerous times for an examination regarding his assets, in accordance with § 1–17–402, W.S.1977.

"Contracts of indemnity are generally classified as those which indemnify against (1) loss or damage or (2) liability. A contract which simply indemnifies, and nothing more, is against loss or damage only, whereas a contract which binds the indemnitor to pay certain sums of money or perform other acts which will prevent harm or injury to the indemnitee is one of indemnity against liability. A single contract may, however, indemnify against both actual loss or damage and liability." 41 Am.Jur.2d, Indemnity, § 1, p. 687 (1968). See also, 42 C.J.S. Indemnity § 2, pp. 565–566 (1944).

" * * * Where, however, the contract is so expressed as to protect the obligee against any claim, suit, or demand, even the institution of a suit against the obligee has been held to entitle him to an action against his guarantor." 41 Am. Jur.2d, Indemnity, § 31, p. 722 (1968).

In *Trapp v. R–VEC Corporation*, Minn. App., 359 N.W.2d 323, 327 (1984), it was said:

"Here the indemnity provision states appellants will 'indemnify and hold R-Vec harmless against the *claim* for payment of any real estate commission due James Trapp.' * * * [T]his agreement is against a claim. The words 'loss' and 'damage' are not used. Thus, R-Vec is entitled to indemnity for liability and liability is established by a judgment. * * *"

If the indemnity instrument (§ 1–39–104(b)) obligates the indemnitor to pay money and the payment of money will prevent harm or injury to the indemnitee, it is an obligation of indemnity against liability. If the statute of indemnity is to save the indemnitee from liability, the indemnitee need not prove actual loss but only that he has become liable. *Alberts v. American Casualty Co. of Reading, Pa.*, 88 Cal. App.2d 891, 200 P.2d 37 (1948). The payment of money in this case "will prevent harm or injury to the indemnitee [Befus]." See also, *Hawaiian Insurance & Guaranty, Ltd. v. Higashi*, Hawaii App., 672 P.2d 556 (1983); 489 P.2d 760 (1971); *Sanchez v. Alonso*, 96 Nev. 663, 615 P.2d 934 (1980); *Esso Standard Oil Company v. Kelly*, 145 W.Va. 43, 112 S.E.2d 461 (1960).

The statutory indemnity set out in § 1–39–104(b) is broad enough to include indemnity against liability. The statute does not simply indemnify against loss or damage, but additionally in the plain words of the statute requires the state to "save harmless, and indemnify its public employees against *any tort claim* or judgment." (Emphasis added.) When a statute provides for indemnity against liability, as in this case, the state then effectively assumes the judgment and the state employee is truly saved harmless as contemplated.

The first opinion should be withdrawn and a new opinion substituted.