Julian A. MILTON, Jr.,
Appellant (Plaintiff),

v.

Charles A. MITCHELL,
Appellee (Defendant).

No. 87–95.

Supreme Court of Wyoming.

Oct. 4, 1988.

Rehearing Denied Oct. 24, 1988.

Kennard F. Nelson, Kirkwood, Copenhaver & Nelson, Laramie, for appellant.

William M. McKellar, Lathrop & Uchner, Cheyenne, for appellee.

Before CARDINE, C.J., and
THOMAS, URBIGKIT and MACY, JJ.,
and BROWN, J.*, Retired.

THOMAS, Justice.

The narrow question to be decided in this case is whether the phrase "scope of his duties" found in § 1–39–114, W.S.1977 (Cum.Supp.1987), and used throughout the Wyoming Governmental Claims Act, §§ 1–39–101 through 1–39–120, W.S.1977 (Cum. Supp.1987), is interchangeable with the term "scope of employment." Julian A. Milton, Jr. (Milton) filed an action against Charles A. Mitchell (Mitchell) seeking damages, in the alternative, for negligence in representing to Milton that he had been employed as a teacher in the Laramie school system, or for breach of an implied contract of employment. Mitchell moved for summary judgment, invoking the one-year statute of limitations prescribed in § 1–39–114, W.S.1977 (Cum.Supp.1987). The district court found that Mitchell "was not acting outside the scope of his employment" in the course of his dealings with Milton, and it held that summary judgment was appropriate because Milton's action was filed more than one year after he filed a claim pursuant to § 1–39–113, W.S.1977 (Cum.Supp.1987). We conclude that "scope of employment" is a different standard from "scope of duty," and it is not properly invoked for purposes of applying the statute of limitations found in § 1–39–114, W.S.1977 (Cum.Supp.1987). We reverse

* Retired June 30, 1988.

the summary judgment and remand the case for a decision on the merits.

In his brief, Milton states the issue in this way:

"Did the district court err in granting defendant's motion for summary judgment on the issue of whether or not a school principal was acting within the scope of his employment in confirming employment as a teacher to plaintiff, without approval by the board of education?"

Mitchell's Brief of Appellee restates the question very simply in this way:

"Whether the district court was correct in granting Mitchell's motion for summary judgment."

Apparently, during his last year at the University of Wyoming, Milton was employed as an assistant coach for the football and track programs and as head coach for the skiing program by Albany County School District No. 1. That employment covered the school year of 1983–1984. Early in the summer of 1984, Milton, who then had graduated and was certified as a teacher, was interviewed by Mitchell in connection with a potential teaching position at Laramie High School which included coaching responsibilities. Mitchell was the principal at Laramie High School. The interview of Milton by Mitchell was conducted at Laramie High School during normal business hours, and nothing suggests that Mitchell represented himself in any way other than as the principal of Laramie High School. At the end of the interview, Mitchell offered the teaching position to Milton and told Milton that the employment would have to be approved by the Board of Trustees. Mitchell stated, however, that such approval was "a mere formality," and Milton contends that he understood that the teaching position was his.

Milton then discontinued his efforts to obtain teaching positions with other school districts and began preparing to teach and coach at Laramie High School. Sometime prior to June 14, 1984, Milton requested a verification of his employment, apparently for two purposes: he wished to establish that he was a resident for purposes of enrollment in a computer class at the University of Wyoming, and he also was applying for a home loan. About June 14, 1984, the following letter, which was signed by Mitchell, was furnished to Milton:

"TO WHOM IT MAY CONCERN:

"For the school year of 1984–85, Mr. Julian A. Milton will be working in the Business Department of Laramie Senior High School in a teaching position."

Then, about mid-July, 1984, Milton was advised that the Board of Trustees had not accepted his application, which meant that he did not have a teaching position with Laramie High School.

Section 21–3–110, W.S.1977 (July 1986 Repl.), requires:

"(a) The board of trustees in each school district shall:

"(i) Prescribe and enforce rules, regulations, and policies for its own government and for the government of the schools under its jurisdiction; * * *."

Consistently with this legislative mandate, the Board of Trustees for Albany County School District No. 1 had adopted "School District Rules, Regulations, and Statements of Policy." Pertinent provisions of those Rules, Regulations, and Statements of Policy specify:

"CHAPTER I

"BY–LAWS OF THE BOARD OF EDUCATION

\*    \*    \*    \*    \*    \*

"CHAPTER II

"SCHOOL DISTRICT RULES, REGULATIONS, AND STATEMENTS OF POLICY

\*    \*    \*    \*    \*    \*

"The Board delegates all executive, supervisory and instructional authority to its employees as hereinafter specified; but retains all other authority over the schools as provided by law.

\*    \*    \*    \*    \*    \*

"d.    The *Board shall have the following specific powers and responsibilities*, together with all others provided by law:

\*    \*    \*    \*    \*    \*

"(6) *Employ a superintendent of schools, teachers, principals, other certified professional employees, and other personnel; and determine their salaries.*

\* \* \* \* \* \*

"(14) Adopt policies for the operation of the district, consistent with the laws of the State of Wyoming.

\* \* \* \* \* \*

"Section 3. *Superintendent of Schools.* The Superintendent shall be the chief executive officer of the Board of Education and the administrative head of all divisions and departments of the school system.

\* \* \* \* \* \*

"The appointment of the Superintendent of Schools shall be the responsibility of the Board of Education. \* \* \*

"*It shall be the responsibility of the Superintendent of Schools to nominate for appointment all personnel employed by the school district. Whenever possible those who are to be the supervisors of the person to be employed shall be consulted during the selection process.*

"*The Superintendent shall recommend personnel for appointment,* \* \* \*.

\* \* \* \* \* \*

"CHAPTER III

"INSTRUCTIONAL PROGRAM

"Section 1. *Principals.* The chief administrative officer in each school shall be the Principal, and *he shall be directly responsible to the Superintendent of Schools.* The Principal shall be the educational leader in his building as well as the chief administrative officer.

\* \* \* \* \* \*

"Duties and responsibilities of the Principal shall be as follows:

\* \* \* \* \* \*

"b. *Within the limits of the laws, Board regulations and policies, and administrative instructions from the central office, he shall be the final administrative authority in his school.*

\* \* \* \* \* \*

"t. He *shall perform such other duties as the Superintendent may direct.*

\* \* \* \* \* \*

"CHAPTER VII

"PERSONNEL POLICIES

"1. *Employment of Certificated Personnel.* It is recognized that, to a great extent, the quality of instruction is related to the quality of personnel in the district. The district shall make a strong effort to recruit highly qualified personnel and to assign them to positions wherein they can make their maximum contribution.

\* \* \* \* \* \*

"b. Selection and Appointment. *The recruitment and selection of personnel are responsibilities of the Superintendent of Schools. Insofar as is possible, the Superintendent of Schools shall consult with appropriate administrative staff members regarding candidates and receive their recommendations regarding the hiring of personnel.*

"*Appointments shall be made by the Board of Education upon the recommendation of the Superintendent of Schools.*" (Emphasis added.)

These Rules, Regulations, and Statements of Policy are consistent with the powers provided for boards of trustees in § 21-3-111, W.S.1977 (Cum.Supp.1987), and there is no provision for delegation of the appointing authority to either the superintendent of schools or the principal of a school.

Not quite a year later, Milton, on May 3, 1985, filed a claim with the Board of Trustees of Albany County School District No. 1, as prescribed by § 1-39-113, W.S.1977 (Cum.Supp.1987).[1] The claim asserted

---

1. Section 1-39-113, W.S.1977, (Cum.Supp.1987), provides, in pertinent part:
    "(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, \* \* \*."

that: Mitchell had offered Milton the teaching position, which was in the Business Department of Laramie High School, with additional duties of coaching the ski and track teams; Milton had accepted the offer of employment; Mitchell assured Milton that "the position was his and that the approval of the Board of Trustees was a mere formality;" Mitchell had signed and furnished to Milton a letter confirming the fact of employment; Milton had discontinued all efforts to obtain other teaching positions; and, on or about July 13, 1984, for reasons unknown to claimant, the Board of Trustees would not hire him. In paragraph five of the claim, Milton stated:

> "The damages incurred by claimant were proximately caused by the negligence of Charles A. Mitchell, an employee of Albany County School District No. 1, who was acting within the scope and course of his employment or by the breach of the contract implied by the conduct outlined in paragraph 3 hereof."

While the denial of this claim is not documented in the record, the parties do not disagree with respect to the fact that it was denied.

Presumably after the claim was denied, Milton, on July 2, 1986, filed an action in the district court against Mitchell personally, and the complaint alleged both negligent and fraudulent misrepresentation. The essential facts parallel those of the earlier claim. One contrasting allegation, however, was that, in the complaint, Milton charged that "[d]efendant's actions as above stated were outside the scope of his duties as principal of Laramie High School." Mitchell answered this complaint, generally denying most of Milton's allegations and raising several affirmative defenses included the defense of bar by the statute of limitations.

Limited discovery was accomplished, and Mitchell filed a motion for summary judgment supported by his affidavit, excerpts from Milton's deposition, and a memoran-

dum of law. The thrust of Mitchell's legal position was that Milton had failed to file the action within a year after the date his claim was filed in accordance with § 1–39–114, W.S.1977 (Cum.Supp.1987), and that the action was barred by virtue of the statute.[2] Mitchell also contended that there was no evidence demonstrating any genuine issue of material fact as to whether he acted within the scope of his employment in offering the teaching position to Milton and, in the absence of any such issue of fact, the statute of limitations provided in the Wyoming Governmental Claims Act required that summary judgment be entered in his favor. Mitchell's motion was opposed by Milton who filed additional excerpts from his deposition, portions of the By-laws, Rules, Regulations, and Statements of Policy of the Board of Education, Albany County School District No. 1, Laramie, Wyoming, and his own memorandum of law. Milton's position was that the board documents demonstrated that a school principal had no authority to hire teachers and, for that reason, Mitchell was outside the scope of his employment when he assured Milton that he had been hired as a teacher. Milton contended that, because Mitchell was outside of the scope of his employment, the Wyoming Governmental Claims Act, including its statute of limitations, did not apply.

In presenting their positions on the motion for summary judgment, Mitchell and Milton both argued the question of fraudulent misrepresentation. Mitchell contended that there was no evidence of fraudulent misrepresentation, while Milton argued to the contrary. With respect to that claim, the district court entered a partial summary judgment in which it found there was no genuine issue of material fact concerning the allegations of fraudulent misrepresentation, and Mitchell was entitled to judgment under the law. Subsequently, the court dismissed the claim of fraudulent

---

**2.** Section 1–39–114, W.S.1977 (Cum.Supp.1987), provides, in pertinent part:

"Except as otherwise provided, actions against a government entity or a public employee acting within the scope of his duties for torts occurring after June 30, 1979 which are subject to this act shall be forever barred unless commenced within one (1) year after the date the claim is filed pursuant to W.S. 1–39–113."

misrepresentation by agreement of the parties.

After Milton's response, Mitchell filed an Affidavit of Leonard Hall, an assistant superintendent of schools for Albany County School District No. 1, who was acting as the superintendent at that time. Hall's affidavit asserted his personal knowledge of the policies and procedures of the school district and, among other things, he said that Mitchell "acted within the scope of his employment as Principal of Laramie High School and within the scope of duties delegated to him by the Superintendent of Schools for Albany County School District No. 1."

In its decision letter, the district court articulated the only remaining issue as:

"Was the defendant, Charles A. Mitchell, Principal of Laramie Senior High School, acting within the scope of his employment when he engaged in negotiations to hire the plaintiff, Julian A. Mitchell, Jr., as a teacher and coach? If so, the claim is barred because suit was not brought by the plaintiff, in compliance with the Wyoming Governmental Claims Act, (W.S. 1–39–102, et seq.). If defendant exceeded the scope of his employment, then compliance with the Wyoming Governmental Claims Act is not required and plaintiff's claim is not barred and survives."

The decision letter went on to encompass a finding that Mitchell was acting on behalf of the school system and that he "had the right to participate * * * in the interview process and make recommendations and representations" regarding Mitchell's employment. In a dispositive vein, the decision letter then said:

"Though the defendant may have been inaccurate in his prediction that plaintiff would be employed by the School Board, he was not acting outside the scope of his employment when he made those representations to the plaintiff. Accordingly, the Court concludes the defendant was acting on behalf of the school system and under the expressed delegation by the Superintendent at all times during his contacts with the plaintiff."

Ultimately, the court concluded that the one-year statute of limitations controlled.

The court then entered an order granting Mitchell's motion for summary judgment. It found that there was no genuine issue as to any material fact, incorporating by reference the reasons set forth in the decision letter. The order then concluded that, as a matter of law, the one-year statute of limitations had run prior to the filing of Milton's action. This appeal is taken from that order.

In the district court and in this court, the parties have earnestly debated the question of whether Mitchell was acting in the "scope of his employment." Any reference to the phrase "scope of duties" appear to be almost incidental. The focus of the argument of the parties, coupled with the casual substitution by this court of "scope of employment" in discussing immunity under the Wyoming Governmental Claims Act,[3] well may have mislead the district judge into the application of an erroneous legal standard.

Both Milton and Mitchell rely upon *Miller v. Reiman–Wuerth Company*, 598 P.2d 20 (Wyo.1979), as the precedent that controls the disposition of this case. Milton insists that, under that case, the determination of whether Mitchell was acting in the scope of employment is a question of fact that must be submitted to the jury, foreclosing summary judgment. Mitchell acknowledges the general proposition that the question of whether an employee is acting within the scope of employment normally is a question of fact for the jury, but Mitchell contends that, if only one inference reasonably can be drawn from the facts, the question becomes one of law for the court, citing *Combined Insurance Company of America v. Sinclair*, 584 P.2d 1034 (Wyo.1978).

---

**3.** See *DeWald v. State*, 719 P.2d 643 (Wyo.1986); *Matthews v. Wyoming Department of Agriculture*, 719 P.2d 216 (Wyo.1986) (Thomas, C.J., concurring in part and dissenting in part); *Davis v. City of Casper*, 710 P.2d 827 (Wyo. 1985); *Hamlin v. Transcon Lines*, 697 P.2d 606, reh. denied 701 P.2d 1139 (Wyo.1985).

We discern a difference in purpose between the term "scope of employment," as applied in *Miller v. Reiman–Wuerth Company,* supra, and the term "scope of duties," as used in the Wyoming Governmental Claims Act. As the concept of scope of employment was presented in *Miller v. Reiman–Wuerth Company,* supra, the question to be solved was the vicarious liability of a master for the conduct of his servant under the doctrine of respondeat superior. In that case, the term "scope of employment" as set forth in 1 Restatement (Second) of Agency 2d §§ 228–236 at 504–524 (1958) was discussed. The opinion also cited and quoted from *Combined Insurance Company of America v. Sinclair,* supra. In resolving the question of vicarious liability, this court concluded that an employee acts within the scope of his employment:

> "If, at the time of the accident, the employee is engaged in furthering the employer's business interests, and with respect thereto the employer has the right to control the details of the work and to discharge the employee for failing to follow orders without incurring liability, * * *." *Combined Insurance Company of America v. Sinclair,* supra, 584 P.2d at 1043.

There is an obvious and marked difference between the criteria that are invoked to determine whether an employee is acting within the "scope of his employment" and those matters that are described in the statutory definition of "scope of duties." Section 1–39–103, W.S.1977 (Cum.Supp. 1987), the definition section of the Wyoming Governmental Claims Act, provides in subsection (a)(v):

> " 'Scope of duties' means performing any duties which a governmental entity requests, requires or authorizes a public employee to perform regardless of the time and place of performance; * * *."

This statutory standard is invoked to determine whether the provisions of the Wyoming Governmental Claims Act apply. The act has a dual effect. One is to avoid the potential defense of immunity to the claim of a third person. Equally important, however, is the protection afforded to the employee because, if the act applies, the employee is indemnified by the State of Wyoming, an automatic invocation of vicarious liability.

The concept that is represented by the enactment of the Wyoming Governmental Claims Act is one of a limited waiver of immunity, and the statute appropriately is construed in a confined way. An analysis of the School District Rules, Regulations, and Statements of Policy, incorporated in the record, demonstrates that Mitchell could not have been requested, required or authorized to enter into a contract of employment for a teaching position with Milton. The Rules, Regulations, and Statements of Policy clearly assign that function to the Board of Trustees. Since Mitchell could not have been requested, required, or authorized to make a contract with Milton, if he did so, he could not have been acting within the scope of his duties as a public employee, and the Wyoming Governmental Claims Act, including the one-year period of limitations found in § 1–39–114, W.S. 1977 (Cum.Supp.1987), would not apply.

The concept of a statutory waiver of governmental immunity is not novel and, in view of the approach taken in other states, it is not likely that the Wyoming legislature intended the phrase "scope of duties" to be the same as "scope of employment." We note that other state legislatures have used different and broader definitions with respect to the extent of immunity provided to employees. See e.g., § 24–10–110, Colo. Rev.Stat. (Cum.Supp.1987) (during the performance of the employee's duties and within the scope of his employment); § 6–904, Idaho Code Ann. (Cum.Supp.1987) (within the course and scope of the employee's employment and without malice or criminal intent); § 2–9–305, Mont.Code Ann. (1987) (within the course and scope of the employee's office or employment); § 81–8,219, Neb.Rev.Stat. (1987) (act or omission of an employee exercising due care in the execution of a statute or regulation, whether or not the statute or regulation is valid, an act based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty

whether or not the discretion is abused); § 32–12.1–04, N.D.Cent.Code (Cum.Supp. 1987) (within the scope of the employee's employment or office); § 21–32–17, S.D.Codified Laws Ann. (1987 Rev.) (within the scope of the employee's employment or agency); § 63–30–4, Utah Code Ann. (1986 Repl.) (within the scope of the employee's employment or under color of authority).

■ We recognize that, even if an erroneous standard was applied by the district court in concluding that Milton's claim was barred by the statute of limitations, we still could affirm the decision if it could be sustained on any legal grounds appearing in the record. *Ferguson v. Ferguson,* 739 P.2d 754 (Wyo.1987); *DeWald v. State,* supra; *Hurst v. State,* 698 P.2d 1130 (Wyo. 1985). As we perceive this case, however, the affirmation would have to relate to the merits of Milton's claim. The record, from Milton's point of view, is that Mitchell assured him that he was employed as a teacher and coach for Laramie High School. Certainly, the letter which Mitchell signed lends credence to Milton's position. From Mitchell's point of view, he stated in his affidavit that he had not created an impression with Milton that he was acting in any manner other than that consistent with the Rules, Regulations, and Statements of Policy. He insists that his participation in the discussions with Milton was appropriate and did not contravene Board policy. Leonard Hall's affidavit would appear to support the Mitchell position in this regard. The only resolution that can be made of this dichotomy in perception of the facts is that, as to the merits of Milton's claim, there does appear to be a genuine issue of material fact.

Mitchell also contends that, in any event, Milton is estopped from asserting that he acted outside the scope of his employment or, more correctly, the scope of his duties because of the allegation in Milton's claim that he had been injured due to Mitchell's actions as "an employee of Albany County School District No. 1, who was acting within the scope and course of his employment * * *." We acknowledge that this court does not look with favor upon a party's altering a position to suit the interests of his case. See *Gray v. Fitzhugh,* 576 P.2d 88 (Wyo.1978); *Allen v. Allen,* 550 P.2d 1137 (Wyo.1976). We note, however, that Milton did not assert in his claim that Mitchell was acting within the "scope of his duties" and, in this instance, the invocation of the doctrine of estoppel would not be appropriate because our rules of alternative pleading accommodate such inconsistent contentions. That specific approach is authorized by Rule 8(e), W.R.C.P., and is not the same as the changing of statements of fact in separate proceedings described in *Gray v. Fitzhugh,* supra.

We reverse the summary judgment entered by the district court and remand this case for a consideration on the merits of the remaining claims set forth in Milton's complaint. The application of the Wyoming Governmental Claims Act, including the one-year statute of limitations, is not appropriate in this instance because the allegations of Milton's complaint, accepted as true, together with the supporting information considered by the district court in connection with the motion for summary judgment, failed to demonstrate that Mitchell acted within the "scope of his duties."

BROWN, J., Retired, filed a dissenting opinion.

BROWN, Justice,[1] dissenting.

I respectfully dissent. The trial court identified the issue in this case as:

Was the defendant Charles A. Mitchell, Principal of Laramie Senior High School, acting within the scope of his employment when he engaged in negotiations to hire the plaintiff, Julian A. Milton, Jr., as a teacher and coach? If so, the claim is barred because suit was not brought by the plaintiff in compliance with the Wyoming Governmental Claims Act (W.S. 1–39–102, et seq.). If defendant exceeded the scope of his employment, then compliance with the Wyoming Governmental Claims Act is not required and plaintiff's claim is not barred and survives.

1. Chief Justice, Retired, June 30, 1988.

In making his decision, the trial court analyzed the case and held as follows:

The Superintendent of Schools has the responsibility "to nominate for appointment all personnel employed by the School District ("Policies", Chapter 11, Section 3)["]. Furthermore, the Rules provide that: "Whenever possible those who are to be the supervisors of the person to be employed shall be consulted during the selection process," (*Id.*) and "... the superintendent has the responsibility to direct a program of recruitment and selection of personnel." [Id. at (d)].

The Principal of a school has specific duties and responsibilities outlined in Chapter III of the "Policies." The Principal serves as "... the supervisor of the teaching in his school." [Chapter III, Section 1(k)]. Additionally, under Chapter III, Section 1, subparagraph "t" the Principal shall perform such other duties as the Superintendent may direct.

In this case, there is no question that the defendant was acting on behalf of the school system when he interacted with the plaintiff. He was not acting on his own. Plaintiff argues that while he may have been acting on behalf of the school system, in so doing he exceeded the scope of his prescribed duties. Again, this Court does not agree. Leonard Hall, Assistant Superin[ten]dent, filed an affidavit attesting to the Principal's role in the employment process. The Court concludes that under the aegis of Chapter III, Section 1, subparagraph "t," and by virtue of the delegation of the Superintendent, the defendant had the right to participate as he did in the interview process and make recommendations and representations regarding employment of the plaintiff.

Though the defendant may have been inaccurate in his prediction that plaintiff would be employed by the School Board, he was not acting outside the scope of his employment when he made those representations to the plaintiff. Accordingly, the Court concludes that the defendant was acting on behalf of the school system and under the expressed delegation by the Superintendent at all times during his contacts with the plaintiff.

I believe that the trial court correctly determined this case. I would affirm his decision.