**Howard HESS, d/b/a Hess Construction Company, Appellant,**

v.

**AMERICAN STATES INSURANCE COMPANY and Economy Insurance Company, Appellees.**

**No. 9036.**

Court of Civil Appeals of Texas, Amarillo.

Oct. 31, 1979.

Rehearing Denied Nov. 21, 1979.

Larry S. Parnass, Irving, for appellant.

Blankenship & Potts, John A. Stewart, Dallas, for American States Ins. Co. and American Economy Ins. Co., appellees.

Coke & Coke, E. Russell Nunnally, Dallas, for Roger Finholt, appellee.

DODSON, Justice.

Howard Hess d/b/a Howard Hess Construction Company appeals from a judgment rendered in favor of American States Insurance Company and American Economy Insurance Company in the amount of $9,400 plus interest as therein provided. He also appeals the take-nothing portion of the judgment decreed against him in favor of Roger Finholt, his third party defendant. We affirm the judgment.

In the process of developing a land use project in the City of Irving, Texas, Roger Finholt was required to extend Glenwich Street a distance of approximately 650 feet. The City's installation, specifications required that the street be cut, filled, graded, paved, curbed, guttered and backfilled. In addition to the paving, Finholt was required to install certain sewage pipelines for the project. He engaged Hess to do the paving and sewage installation. Finholt and Hess executed two contracts, one covering the paving work and the other pertaining to the sewage work. The paving contract required Hess to complete the work according to the City's specifications. On behalf of Hess, American States Insurance Company through its subsidiary American Economy Insurance Company issued performance and payment bonds to the City and Finholt as obligees. As a part of the bonding transaction, Hess gave the bonding companies an indemnity agreement.

Before the City accepted the installation, portions of the concrete paving sank. The parties agreed that the depressions in the paving were caused by erosion in the pavement subsurface and that faulty backfilling caused the erosion. The City withheld acceptance of the paving installation, asserted a claim under the performance bond and called on the bonding companies to remedy the installation. The bonding companies requested Hess to remedy the installation. He declined claiming that the faulty installation was not totally attributable to him. The bonding company hired another contractor to repair and complete the paving work to the City's satisfaction. The total cost to the bonding companies for completing the work was $7,500.

The bonding companies filed suit against Hess to recover the $7,500 and attorney's fees under the indemnity agreement. Hess answered by general denial and further alleged that no free soil was available to complete the backfill work, that Finholt agreed to provide the backfill and assume full responsibility for completion of the backfill work, and that Finholt never completed the backfill which caused the soil to erode under the concrete paving which in turn caused the pavement to sag. He also alleged that the original damage to the pavement could have been remedied for no more than $1,000 and that the City of Irv-

ing and the bonding companies delayed for several months causing additional expenses in alleviating the problem.

Hess filed a third party action against Finholt alleging, in essence, the matters set forth in his defenses to the bonding companies' action on the indemnity agreement. He also alleged that Finholt failed and refused to pay him $2,900 due under the original construction contract between them. He asked for indemnity from Finholt on the bonding companies' actions, the $2,900 and attorney's fees.

Finholt answered Hess's actions with a general denial and alleged the statute of limitations, the statute of frauds, failure of consideration and full payment as affirmative defenses. He also filed a counterclaim against Hess, alleging damages in the amount of $1,839.25 for expenses incurred as a result of Hess's failure to complete his contract. In the judgment, the trial court decreed that Finholt take nothing on his counterclaim against Hess. Finholt does not appeal from the judgment.

The case was tried by the court with a jury. The jury found that Hess did not fail to perform in accordance with the terms and conditions of the 6 December 1973 paving contract; that he did not fail to complete the clean-up operation called for by the paving contract; and that he did not fail to perform in accordance with the terms and conditions of the sewage installation contract dated 7 February 1973. The jury also found that $5,000 was a reasonable cost to repair the depressions in the street in question and that $1,900 was a reasonable attorney's fee for the bonding companies. The bonding companies filed a motion for judgment notwithstanding the jury's verdict on the issues save and except the jury's favorable answer that $1,900 was a reasonable attorney's fee. The trial court granted the motion.

Hess brings only two points of error challenging that portion of the judgment favorable to the bonding companies. First, he maintains that "the trial court erred in granting the motion for a judgment non obstante veredicto because there was suffi-

cient evidence presented before the court to sustain the jury verdict rendered." Assuming arguendo that the evidence supports the answers the court disregarded in rendering judgment, the court would be authorized to disregard those answers if they were immaterial to Hess's liability. *See C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966). Hess's liability to the bonding companies on the indemnity agreement must be determined by the provisions of the agreement. *Central Surety & Ins. Corp. v. Martin*, 224 S.W.2d 773, 776, (Tex.Civ.App. —Beaumont 1949, writ ref'd). Pertinent parts of the indemnity agreement are as follows:

SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court cost and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds. . . . *Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety*, whether or not the Surety shall have made any payment therefor. . . . [T]he Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

SIXTH: In the event of any breach, delay or *default asserted by the obligee* in any said Bonds, . . . the Surety shall have the right, at its option and in

its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

(Emphasis added).

Hess admits that he signed the indemnity agreement. The uncontroverted evidence establishes *inter alia* that the bonding companies executed the bonds on behalf of Hess; that the City of Irving and Finholt were obligees under the bonds; that under the bonds, the City asserted a breach, delay or default on the paving installation; and that the bonding companies completed or arranged for the repairs and completion of the work. The uncontroverted evidence also establishes that the bonding companies made demand upon Hess for indemnity of the funds expended in repairing and in completing the work, that Hess did not indemnify the bonding companies for the expenses, and that the bonding companies incurred attorney's fees in bringing the action. Consequently, the jury found that $1,900 was a reasonable attorney's fee for the bonding companies.

■ The jury found four issues favorable to Hess. These findings are set forth above. In essence, the jury determined that Hess did not fail to perform the construction contracts according to their terms and conditions and that $5,000 was a reasonable amount to repair the street in question. The jury's verdict on these issues does not establish any defense to the bonding companies' action on the indemnity agreement. An actual default by Hess on the construction contracts resulting in liability on the performance bonds is not a condition precedent to the bonding companies' right of recovery on the indemnity agreement. *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693, 698

(Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.); *Central Surety & Ins. Corp. v. Martin*, 224 S.W.2d 773, 776 (Tex.Civ. App.—Beaumont 1949, writ ref'd).

■ Hess plead that the bonding companies and the City failed to use due diligence in repairing the street, and that by using due diligence the street could have been repaired for no more than $1,000. The uncontroverted evidence shows that the bonding companies incurred and expended $7,500 in repairing and completing the street installation. The jury found that $5,000 was the reasonable cost to repair the street but this jury finding is rendered immaterial by the good faith provision of the indemnity agreement, in the absence of pleadings and proof of bad faith or fraud by the bonding companies. The good faith provision is stated in paragraph 2(1) which is quoted above. In construing a good faith provision with similar import as paragraph 2(1) in the agreement before us, the court in *Central Surety & Insurance Corp. v. Martin*, *supra*, at 776 said: "[W]e are confronted with the well-nigh inescapable conclusion that the parties to this bond [indemnity agreement] have lodged in the indemnitee a discretion limited only by the bounds of fraud."

Hess did not plead or prove fraud and he does not now contend that the bonding companies acted fraudulently or in bad faith in undertaking to remedy the street, or incurring expenses in the amount of $7,500 to repair it. Under the circumstances, we overrule Hess's first point of error.

■ In his second point of error, Hess maintains that "the trial court erred in failing to require a jury finding on the fact issue as to whether or not appellant Hess failed to instruct the appellee insurance companies to defend him against the claim, as required in paragraph 13 of the indemnity agreement." Paragraph 13 of the indemnity agreement provides:

THIRTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, *unless* the Contractor

and the Indemnitors *shall request* the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, *and shall deposit* with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorney's fees, including those of the Surety. (Emphasis added).

Hess did not plead or offer any evidence that he requested the bonding companies to litigate the claim or defend a suit on the claim, or to take any such action on the claim. Nor does he assert compliance with the deposit provision in paragraph 13. In his brief, he claims the matter was raised in his closing argument which comes too late in the proceedings. The record shows that he did not plead this defense as required by Rule 94 of the Texas Rules of Civil Procedure and that he did not request an issue on this defense as required by Rule 279 also of the Texas Rules of Civil Procedure. Under the circumstances, we must conclude that he waived the defense. Accordingly, the second point is overruled.

In his third point of error, Hess complains that "the trial court committed reversible error in failing to grant a new trial against third party defendant, Roger Finholt, in that defendant Hess was not allowed to phrase his submission of jury issues in such a way that the jury would have an opportunity to answer issues against the third party defendant." By this point, Hess maintains that the trial court committed reversible error by refusing to give three requested special issues, which he relies on to establish liability against Finholt. Five "request to submit special issue" forms appear in the transcript but none of the requests are signed by the judge. The record does not show that any of the requests were presented to the judge or that a ruling was made on any of the requests. Thus, we must overrule Hess's third point. Tex.R. Civ.P. 272, 276; *see American Pozzolan Corp. v. Desert Trucking Co.*, 450 S.W.2d 433, 435 (Tex.Civ.App.—San Antonio 1970, writ ref'd n. r. e.).

In summary, Hess's three points of error are overruled. Accordingly, the judgment is affirmed.

COUNTISS, J., not participating.