HAWAIIAN INSURANCE & GUARANTY COMPANY, LIMITED, Plaintiff-Appellant, *v.* RONALD G. HIGASHI and SHIZUE HIGASHI, Defendants-Appellees

NO. 9110

(CIVIL NO. 4598)

NOVEMBER 10, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In a suit on an indemnity agreement, plaintiff Hawaiian Insurance & Guaranty Company, Limited (HIG) appeals from the judgment in favor of defendants Ronald G. and Shizue Higashi (the Higashis). The principal issue is whether the trial court erred in concluding that the Higashis, as indemnitors, were free from liability. We hold that the trial court erred and reverse.

The material facts are not in dispute. On November 29, 1974, the Higashis, as indemnitors, executed a general indemnity agreement (agreement) in favor of HIG, thus inducing HIG, as surety, to issue performance bonds on behalf of R.G. Higashi Plumbing, Inc. (Plumbing), as principal. In 1975, HIG issued three performance bonds on behalf of Plumbing, as principal, for subcontracting work with Pacific Construction Co., Ltd. (Pacific), as obligee.

A dispute arose between Plumbing and Pacific under their subcontract. Plumbing filed a complaint in Second Circuit Court Civil No. 3424 to collect from Pacific $25,000 due under the subcontract. Alleging problems relating to delamination and chipping of the finish of the bathtubs installed under the subcontract, Pacific counterclaimed against Plumbing and filed a third-party complaint against Colton Manufacturing, Inc. (Colton), the bathtub manufacturer, and HIG, as surety under Plumbing's performance bonds. Civil No. 3424 was settled with (1) Pacific not having to pay the $25,000 which was claimed by Plumbing, (2) Plumbing receiving $20,000 of which Pacific paid $13,333.33 and Colton paid $6,666.67,[1] and (3) HIG, as surety, paying $13,333.33 to Pacific. The settlement agreement and release (Plaintiff's Exhibit 5) was executed on October 15, 1979.

On April 7, 1980, HIG commenced an action against the Higashis, as indemnitors under the agreement, to recover the $13,333.33 it had paid to Pacific in the settlement of Civil No. 3424 plus the costs it had incurred. After a bench trial held on July 6, 1982, the trial court found and concluded on October 5, 1982, that the Higashis were not liable. HIG appealed from the judgment filed on November 1, 1982.

---

[1] The record indicates that at the time of settlement, R.G. Higashi Plumbing, Inc. was in bankruptcy and the settlement agreement was subject to the approval of the Bankruptcy Court.

I.

HIG contends that the trial court clearly erred in finding that the "liability and/or noncompliance of the subcontract by, of or against [Plumbing], as principal under the . . . performance bonds, were and have never been established or determined to exist." Finding of Fact No. 11. Therefore, HIG argues that the trial court erred in concluding that since "a surety is not liable to pay on behalf of or for the principal until the principal is liable" (Conclusion of Law No. 2), "[the Higashis] are not liable to [HIG] for its payments made to [Pacific]." (Conclusion of Law No. 1). We hold that the finding is irrelevant and the conclusion of nonliability is wrong.

The majority rule is that a claim for indemnity "requires that an actual liability be sustained by the indemnitee, and if he settles a claim without a determination of the rights in question, he bears the risk of proving an actual liability in the action over for indemnity." *Tankrederiet Gefion A/S v. Hyman-Michaels Co.*, 406 F.2d 1039, 1042 (6th Cir. 1969) (quoting *The Toledo*, 122 F.2d 255, 257 (2d Cir.), *cert. denied*, 314 U.S. 689, 62 S. Ct. 302, 86 L.Ed. 551 (1941)). *Cf. Caribbean Steamship Co., S.A. v. Sonmez Denizcilik Ve Ticaret, A.S.*, 677 F.2d 254 (2d Cir. 1982). However, in cases in which (1) the indemnitee's claim for indemnity is based on a judgment, or (2) the indemnitor is tendered the defense and refuses it, or (3) the indemnitee's claim against the indemnitor is founded upon a written indemnity agreement, the rule is not applicable, and the indemnitee need only show potential, rather than actual, liability. *Terra Resources, Inc. v. Lake Charles Dredging & Touring Inc.*, 695 F.2d 828 (5th Cir. 1983); *Wisconsin Barge Line, Inc. v. Barge Chem 300*, 546 F.2d 1125 (5th Cir. 1977); *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir. 1973), *cert. denied*, 415 U.S. 957, 94 S. Ct. 1485, 39 L.Ed.2d 572 (1974); *Whisenant v. Brewster-Bartle Offshore Co.*, 446 F.2d 394 (5th Cir. 1971); *Tankrederiet Gefion A/S v. Hyman-Michaels Co., supra. See also Pritts v. J. I. Case Co.*, 108 Mich. App. 22, 310 N.W.2d 261 (1981). In cases involving a written indemnity agreement, the "ultimate decision turns upon the language of the contractual undertaking." *Tankrederiet Gefion A/S v. Hyman-Michaels Co., supra,* at 1043. *See also Commercial Insurance Co. of*

*Newark v. Pacific-Peru Construction Corp.,* 558 F.2d 948 (9th Cir. 1977).

Here, the agreement expressly provides in relevant part as follows:

2. The Indemnitors shall at all times indemnify . . . the Surety and hold and save it harmless *from and against any and all liability,* lossess [sic], costs, damages, attorneys' and counsel fees, and disbursements, and expenses *of whatever kind or nature* which the Surety may sustain or incur by reason or in consequence of having executed . . . any [performance bond] . . ., and *which the Surety may sustain or incur in taking any steps it may deem necessary* in making any investigation, in defending or prosecuting any actions, suits or other proceedings which may be brought, . . . *in obtaining or attempting to obtain release from liability,* or in enforcing any of the covenants of this agreement; to pay over, reimburse and make good to the Surety, its successors or assigns, all money which the Surety or its representatives shall pay, or cause to be paid or become liable to pay, by reason of the execution of any [performance bond] . . . . [Emphasis added.]

\* \* \* \* \*

6. It shall not be necessary for the Surety to give the Indemnitors notice of any act, fact or information coming to the notice or knowledge of the Surety concerning or affecting its rights or liability under any such instrument by its [sic] so executed, or the Indemnitors' rights or liabilities hereunder, *notice of all such being hereby expressly waived. The Surety shall have the exclusive right for itself, and for the Indemnitors, to decide and determine whether any claim, demand,* liability, suit, action, order, judgment or adjudication, made or brought against the Surety and any of the Indemnitors on any instrument, jointly or severally, *shall or shall not be defended, tried or appealed, and its decision shall be final, conclusive and binding upon the Indemnitors, and* any order, judgment or adjudication made, entered or affirmed as a result thereof, or *any loss,*

*costs, charge, expense or liability thereby incurred, sustained or paid shall be borne and paid by the Indemnitors immediately upon demand by the Surety,* and the Indemnitors especially consent thereto. [Emphasis added.]

Under the above-quoted provisions of the agreement, the Higashis empowered HIG to settle Pacific's third-party claim and obtain a release from liability as surety under Plumbings' performance bond without any notice to the Higashis, which HIG proceeded to do. The agreement imposed no obligation upon HIG to have the liability of Plumbing under the subcontract determined judicially before settling with Pacific. Indeed, the provisions in the agreement were for the purpose of facilitating the handling of settlements by HIG, as surety, and "obviat[ing] unnecessary and costly litigation." *Transamerica Insurance Co. v. Bloomfield,* 401 F.2d 357, 363 (6th Cir. 1968).

The performance bonds and Pacific's third-party complaint were sufficient to show HIG's potential liability and when HIG settled Pacific's third-party claim, the Higashis, as indemnitors, became liable to HIG for the settlement amount and costs and expenses under the agreement. Thus, the trial court's finding that Plumbing's liability had not been established is irrelevant and its conclusion that the Higashis, therefore, could not be liable under the agreement is wrong.

II.

The Higashis claim that under all of the circumstances in this case, "the payment [of $13,333.33] made by H.I.G. [to Pacific] was plainly an unreasonable and reckless one." Appellees' Answering Brief at 7.

Even if an indemnitee has a legal right to settle a claim, the settlement must be reasonable and made in good faith.[2]

---

[2] *Kirkpatrick & Associates, Inc. v. The Wickes Corp.,* 53 N.C. App. 306, ___, 280 S.E.2d 632, 636 (1981), holds that "[a] settlement is presumed to be fair and reasonable, and the burden of showing a lack of good faith is upon the party asserting it."

*National Surety Corp. v. Peoples Milling Co., Inc.,* 57 F.Supp 281 (W.D. Ky. 1944). However, an indemnitor may attack the payment made by the indemnitee only by pleading and proving unreasonableness of the settlement or lack of good faith by the indemnitee. *See Engbrock v. Federal Insurance Co.,* 370 F.2d 784 (5th Cir. 1967); *National Surety Corp. v. Peoples Milling Co., Inc., supra; United States Fidelity & Guaranty Co. v. Napier Electric & Construction Co., Inc.,* 571 S.W.2d 644 (Ky. App. 1978); *Hess v. American States Insurance Co.,* 589 S.W.2d 548 (Tex. Civ. App. 1979). *Cf. Commercial Union Insurance Co. v. Melikyan,* 430 So.2d 1217 (La. App. 1983). Thus, such a defense must be pleaded affirmatively or it is waived. Rule 8(c), Hawaii· Rules of Civil Procedure (1981). Since the Higashis failed to plead and prove such affirmative defense below, they may not assert it on appeal.

### III.

We reverse the judgment and remand the case with direction that the trial court determine the exact amount or amounts payable by the Higashis to HIG under the agreement and enter a judgment in favor of HIG.

Reversed and remanded.

*Charles H. Witherwax* (*William Schmidt* with him on the briefs) for plaintiff-appellant.

*John T. Vail* for defendants-appellees.