RICHARD D. PALEVAC AND NANCY PALEVAC, APPELLANTS, v. MID CENTURY NON AUTO, RESPONDENT.

No. 16253

December 31, 1985                                710 P.2d 1389

*Edward G. Marshall,* Las Vegas, for Appellants.

*Joseph L. Benson,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from an order and judgment granting respondent's motion for summary judgment.

In 1978, appellant Richard D. Palevac (Palevac), Donald D. Ferderer (Ferderer), and R. J. Robinson (Robinson) were the sole shareholders of Las Vegas Hosts, Inc. and New Horizons Travel, Inc., two Nevada corporations operating two travel agencies in Las Vegas.

As most of the business carried on by the two travel agencies was conducted over long distance telephone lines, the travel agencies applied to Central Telephone Company (Centel) for several WATS lines.

Before it would install those WATS lines, Centel required the individual shareholders of the two travel agencies to personally indemnify Centel for any charges incurred to Centel by the two travel agencies. Toward that end, on September 11, 1978, the two documents relevant to the instant appeal were executed: first, a Surety Bond under which respondent Mid Century Non Auto (Mid Century) agreed to pay "all just bills" incurred by the two travel agencies to Centel; and second, a General Indemnity Agreement under which Palevac agreed to pay Mid Century certain premiums and to indemnify Mid Century against any "claim, demand, liability, cost, charge, counsel fee, expense, suit, order, judgment, and adjudication" incurred by Mid Century as a consequence of the Surety Bond. The General Indemnity Agreement further provided that "in the event of payment by the Surety the Indemnitor agrees to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof and of the Indemnitor's liability therefor to the Surety."[1]

In late 1979 or early 1980, a dispute arose between Centel and the two travel agencies. Centel and Mid Century assert that the two travel agencies failed to pay $35,198.66 owed to Centel. Palevac, however, asserts that the two travel agencies never owed Centel $35,198.66. In an affidavit accompanying Palevac's opposition to Mid Century's motion for summary judgment, Ferderer, who was president and principal officer of the two travel agencies, stated that the travel agencies never owed Centel $35,198.66. Ferderer swore in his affidavit that the disputed $35,198.66 was the amount due for service for WATS lines that Ferderer had instructed Centel to disconnect. Ferderer also asserted that each year, during the holidays, due to a decrease in telephone business, Ferderer instructed Centel to disconnect several WATS lines. Ferderer swore that during the year in which the dispute arose, though Ferderer instructed Centel to disconnect several WATS lines, Centel failed to do so. Ferderer alleged that Centel employees assured him on numerous occasions that the

___

[1]Apparently, Ferderer and Robinson executed similar General Indemnity Agreements.

WATS lines would be disconnected. Finally, Ferderer claims that, once it appeared that the WATS lines had not been disconnected, Centel employees assured him that the travel agencies would not be billed for the lines that he had instructed Centel to disconnect.

In early 1980, Centel billed the two travel agencies $35,198.66. When the travel agencies did not pay the bill, Centel disconnected all of the travel agencies' telephones, and the travel agencies went out of business. On March 31, 1980, a credit representative from Centel made a claim against Mid Century under the Surety Bond for $35,198.66. On June 19, 1980, Mid Century delivered a check to Centel for $18,650.00, the limit to which Mid Century had obligated itself under the Surety Bond.

Mid Century then initiated the instant action by filing a complaint against the three owners of the travel agencies. That complaint alleged that the owners had breached their respective General Indemnity Agreements by failing to indemnify Mid Century for the $18,650.00 that Mid Century had paid to Centel pursuant to the Surety Bond. Ferderer was not served with process and, thus, was not a party to the original action. After Palevac and Robinson had answered Mid Century's complaint, Mid Century filed its motion for summary judgment, which the district court granted. Robinson is not a party to the instant appeal.

Palevac asserts that the district court erred in granting Mid Century's motion for summary judgment. We agree. We therefore reverse and remand to the district court for further proceedings consistent with this opinion.

Where a Surety Bond and a General Indemnity Agreement are executed together, the Surety/Indemnitee has an obligation to notify the Principal/Indemnitor before paying a third party under the Surety Bond. Fidelity & Casualty Co. of New York v. McNamara, 36 S.E.2d 402 (W.Va. 1945). Where the Surety/Indemnitee does not so notify the Principal/Indemnitor, the Surety/Indemnitee has no right to recover against the Principal/Indemnitor under the General Indemnity Agreement for non-obligatory or voluntary payments made to a third party under the Surety Bond. Land Resources Development v. Kaiser Aetna, 100 Nev. 29, 676 P.2d 235 (1984); Carson Opera House Ass'n v. Miller, 16 Nev. 327 (1881); Jones v. Childs and Vansickle, 8 Nev. 121 (1872). In the instant case, Mid Century, the Surety/Indemnitee, had an obligation to notify Palevac, the Principal/Indemnitor, before paying Centel under the Surety Bond. If Mid Century did not so notify Palevac, Mid Century has no right to recover against Palevac under the General Indemnity Agreement

for nonobligatory or voluntary payments made to Centel under the Surety Bond.

"Summary judgment under NRCP 56 is appropriate only when the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, and where no genuine issue remains for trial." In the Matter of the Las Vegas Hilton Hotel Fire Litigation, 101 Nev. 489, 706 P.2d 137 (1985).

Mid Century is not entitled to judgment as a matter of law. Genuine issues remain for trial: namely, whether Mid Century notified Palevac before paying Centel under the Surety Bond and whether the payments Mid Century made to Centel under the Surety Bond were nonobligatory or voluntary. Therefore, the district court erred in granting Mid Century's motion for summary judgment.

We therefore reverse and remand to the district court for further proceedings consistent with this opinion.