UNITED STATES of America for the Use of the TRUSTEES OF the ELECTRICAL WORKERS LOCAL PENSION FUND, et al., Plaintiffs,

v.

D BAR D ENTERPRISES, INC., a Utah corporation, a/k/a C & D Electric, et al., Defendants.

FIDELITY DEPOSIT COMPANY, a Maryland corporation, Third Party Plaintiff,

v.

Robert L. STODDARD, Deanna Stoddard, and Does I—X, inclusive, Third Party Defendants.

No. CV–S–89–161–HDM(RJJ).

United States District Court, D. Nevada.

June 27, 1991.

Patricia F. McAllister, Dennis M. Sabbath, Sabbath & Christensen, Chtd., Kevin Christensen, Las Vegas, Nev., for plaintiffs.

Leon Denney, pro se.

Alan J. Lefebvre, Kurt C. Faux, Beckley, Singleton, Delanoy, Jemison & List, Chtd., Michael E. Talbert, Gregory T. Hafen, Hafen & Mayor, Ltd., Donald E. Brookhyser, Jolley, Urga, Wirth & Woodbury, Las Vegas, Nev., Debria K. Denney, Boise, Idaho, for defendants.

## ORDER

McKIBBEN, District Judge.

This case originated with a complaint by the trustees of the Electrical Workers' Local pension fund against D–Bar–D Enterprises and two other related companies (D–Bar–D) for failing to pay union wages and fringe benefits according to a labor agreement. Some of the wages and benefits were for employees working on projects on which third-party defendants Stoddards were the general contractors and D–Bar–D were subcontractors. Defendants Insurance Company of the West (West) and Fidelity Deposit Company (Fidelity) issued performance and payment bonds and a Contractor's License Bond, respectively, to Stoddards. According to the complaint, Stoddards filed for bankruptcy in February 1989 and plaintiffs were precluded from proceeding against them directly. Therefore, the trustees filed its complaint against the insurance companies to attempt to recover on the bonds. Fidelity filed a third-party claim against Stoddards for indemnification.

Fidelity settled its claim with the union trustees for nine thousand, one hundred and fifty dollars ($9,150), approximately one-half the amount the trustees were seeking from West and Fidelity. West also settled its claim. Fidelity now seeks reimbursement of the settlement amount from the Stoddards pursuant to an indemnification clause contained in the bond agreement. Stoddards have filed a motion to dismiss (# 65). Fidelity has filed a cross motion for summary judgment (# 70).

## FACTS

In March 1982, Fidelity issued a contractor's licensing bond to Stoddard Building Company. As part of the bond agreement, Robert and Deanna Stoddard (third-party defendants) agreed to indemnify Fidelity against all liability for losses and expenses incurred by reason of having executed or procured the contractor's bond. The bond agreement also included a clause whereby Fidelity retained the right to settle any claims on the bond unless the Stoddards requested Fidelity to litigate the claim and deposited collateral with Fidelity to cover litigation expenses.

Stoddard was the general contractor on two federal projects in Nevada (Nellis A.V.D.S. Dormitory) and a subcontractor on a third (Tonopah Gas Station). D–Bar–D had subcontracts with Stoddard on all three projects. The union trustees brought an action against D–Bar–D claiming that D–Bar–D failed to pay union wages and fringe benefits to employees who worked on the three Stoddard projects in 1987 and 1988. The complaint included a cause of action against the two sureties, West and Fidelity, claiming that Stoddard was liable for the debts of the subcontractors under Nevada Revised Statutes §§ 608.150 and 624.273. (The trustees did not sue Stoddards directly because they were in bankruptcy.)

Fidelity contends that, after conducting substantial discovery, it determined that the trustees' claims appeared to be valid, and that the amount claimed was reasonable or perhaps even lower than that actually owed. In addition, Fidelity argues that West may have been able to avoid liability, leaving Fidelity liable for the full amount. Based on its investigation, Fidelity settled the matter. Fidelity recognized a possible defense on the ground that the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(3), preempts the trustees' state law cause of action. However, Fidelity maintains that the law in this area is unclear and that it settled the claim in good faith. Fidelity now claims that Stoddards must reimburse it for the settlement amount and expenses incurred in litigation up to the time of settlement.

Stoddards, as third-party defendants, argue that they are entitled to assert any defenses as may be raised in the original complaint under Fed.R.Civ.P. 14(a); that Fidelity could have asserted a preemption defense in the claim against them; that Fidelity settled the claim in bad faith; and that they were not given notice of the settlement as required by Nevada law and so are not liable to Fidelity.

## ANALYSIS

Fidelity argues that, under the terms of the indemnification agreement, Stoddards are required to indemnify them for the amount paid out in settlement and defense of the trustees' claim. Stoddards argue that Fidelity has failed to show the original claim against it would not have been preempted by ERISA, that the settlement was not reasonable, and that the indemnification clause is ineffective because Fidelity failed to give Stoddards notice before settling the claim.

The indemnification agreement provides that Stoddards will indemnify Fidelity "from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur" by reason of having executed the bond. The agreement further provides that Fidelity

shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable ... or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed....

Under the agreement, evidence of payment by Fidelity is prima facie evidence of Stoddards' liability to Fidelity.

The indemnification agreement included a waiver of notice of execution under the bond and agreement. In addition, Fidelity

retained the right to settle or compromise any claim unless Stoddards requested that the claim be litigated and deposited collateral with Fidelity to cover litigation costs.

■ The general rule of indemnification, in the absence of an express agreement, is that actual liability must be sustained by the indemnitee, and that if an indemnitee settles a claim, it must prove actual liability to be entitled to indemnification. Where a written indemnification agreement exists, however, the indemnitee need show only potential liability. *Hawaiian Insurance and Guaranty Co. v. Higashi*, 4 Haw.App. 608, 672 P.2d 556, 558 (1983). "A court confronted with such an agreement should insure that the claim was not frivolous, that the settlement was reasonable, that it was untainted by fraud or collusion, and that the indemnitee settled under a reasonable apprehension of liability." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1218 (5th Cir.1986). There is no allegation or evidence of fraud or collusion in this case.

■ Where an indemnification agreement subjects the right to settle a claim to the sole discretion of the surety, the parties may expect that the surety will settle only after reasonable investigation of the claims, counterclaims, and possible defenses. *City of Portland v. G.D. Ward & Assoc.*, 89 Or.App. 452, 750 P.2d 171, 175 (1988). Finally, the Nevada Supreme Court has held that a surety has an obligation to notify the indemnitor before paying a third party under the bond. *Palevac v. Mid Century*, 101 Nev. 835, 837, 710 P.2d 1389 (1985).

■ Stoddards assert that the Plaintiffs' claim against Fidelity based on Nev.Rev. Stat. §§ 608.150 and 624.273 are preempted by ERISA and therefore Fidelity could not have settled in good faith. The state statutes provide that "original" contractors are liable for their subcontractors' indebtedness and recovery on bonds. Although a strong argument for preemption exists, Fidelity argues that because the law in this area is less than "crystal clear," it determined to settle the claims. Under the indemnification agreement, Fidelity is entitled to reimbursement if it can establish potential liability.

The court need not determine whether the trustees' state law claim here is in fact preempted by ERISA. The issue must be addressed only to determine if Fidelity acted reasonably in concluding that it faced potential liability.

In *Pilot Life Insurance v. Dedeaux*, the Supreme Court held that state laws and causes of action relating to ERISA-governed plans are preempted. 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The same year, the Court held that a Maine plant-closing statute that required employers to give laid-off employees severance pay was not preempted. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). The Court distinguished between laws that affect employee benefits and those that affect employee benefit *plans*, and held that only the latter are preempted. *Id.* at 7–8, 107 S.Ct. at 2215–2216. In *Fort Halifax*, the Court held that the purpose of ERISA preemption is to protect employers from conflicting plan administration requirements, and that these concerns are not implicated where only benefits, and not benefit plans, are involved. *Id.* at 8–9, 107 S.Ct. at 2215–2216.

The Court has also distinguished between state laws that explicitly refer to ERISA plans and those that do not single out ERISA plans but may have an effect on them. In *Mackey v. Lanier Collections Agency & Service*, the Court held that a general garnishment statute was not preempted, even though it was applied to benefits under an ERISA plan. 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). A Wisconsin appellate court applied the reasoning of *Mackey* and held that a state construction lien law could be used to collect unpaid ERISA benefits. *Plumbers Local 458 v. Immel, Inc.*, 151 Wis.2d 233, 445 N.W.2d 43 (1989).

A California appellate court came to the opposite conclusion in *Carpenters Southern California Administrative Corp. v. El Capitan Development Co.*, 223 Cal.

App.3d 1034, 243 Cal.Rptr. 132 (1988). There, the court held that the lien law was preempted because it provided an additional remedy for collection of benefits, not solely an additional enforcement mechanism as was approved by *Mackey*. The California Supreme Court has granted review in this case but has not yet ruled. It is arguable that the rationale of *El Capitan* is inapplicable in the present case because the California statute refers to trust funds explicitly, while the Nevada statutes do not. The Fifth Circuit came to the same conclusion as the California court in *Iron Workers Pension Fund v. Terotechnology*, 891 F.2d 548 (5th Cir.1990). Again, however, the state statute at issue there made explicit reference to employee benefit plans. In addition, the Fifth Circuit ruled in February 1990, only a few months before the parties finalized the settlement in this case.

The Ninth Circuit Court of Appeals has held that ERISA preempts four types of state laws: 1) laws that regulate the types of benefits or terms of ERISA plans; 2) laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans; 3) laws that provide rules for the calculation of benefits; 4) laws that provide remedies for misconduct arising out of the administration of ERISA plans. *Local Union 598 v. J.A. Jones*, 846 F.2d 1213 (9th Cir.1988). According to the Second Circuit, "where a state statute of general application 'does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the statute has some economic impact on the plan does not require that the statute be invalidated.'" *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir.1989).

The present case involves benefits due under an ERISA plan. The statute under which a partial remedy is sought, though, does not refer to an employee benefit plan. It may be argued that the state law provides a "remedy for misconduct arising out of the administration of an ERISA plan," and is therefore preempted. It can also be argued, however, that the laws are not preempted because their effect on ERISA plans is too remote. *See Shaw v. Delta Airlines*, 463 U.S. 85, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983). Although the exception noted in *Shaw* has rarely been applied, the precise question at issue here has not been addressed in any cases cited by the parties or found by this court. State law decisions on closely-related issues have come to conflicting results; one case is still under review by the California Supreme Court.

The Ninth Circuit Court of Appeals has held that ERISA does not provide federal courts with jurisdiction over claims against a contractor's surety. Administrators of an employee benefit plan brought an action under ERISA to recover unpaid benefits. The administrators also brought an action against the surety on the contractor's state license bond. The court held that state surety laws are designed to protect the public and those harmed by the employer's failure to pay. Therefore, a surety does not act in the interest of the employer for ERISA purposes. The court declined jurisdiction under ERISA because any obligation of the surety to the administrator of an employee benefit plan was founded in state, not federal, law. The court did not address the preemption issue. *Carpenters Southern California Administrative Corp. v. D. & L. Camp Construction*, 738 F.2d 999, 1001 (9th Cir.1984).

Based on the above summary of the law and the record in this case, the court concludes that Fidelity reasonably considered the claim and possible defenses before settling. There is, undeniably, a strong argument to be made for preemption. However, it cannot be said conclusively that Fidelity would have prevailed on this point. Fidelity has presented affidavits that it conducted discovery, considered relevant defenses, and determined in good faith that it faced potential liability. The court expresses no opinion as to whether ERISA preempts the state law claim at issue here. The court need only reach the conclusion, as it has, that Fidelity had a reasonable basis for settling the claim. This is sufficient to defeat Stoddards' motion to dis-

miss. Accordingly, third-party defendants' motion to dismiss (# 65) is DENIED.

■ The court now turns to Fidelity's motion for summary judgment. Fidelity must establish that the claim against it was not frivolous, that the indemnitee settled under a reasonable apprehension of liability, and that the settlement was reasonable and untainted by fraud or collusion. *See Fontenot,* 791 F.2d at 1218. Stoddards have not alleged fraud or collusion. As noted above, Fidelity has established that the claim against it was not frivolous and that it was under a reasonable apprehension of liability.

Stoddards' argument that Fidelity acted in bad faith is unpersuasive. Fidelity admits that it recognized a possible preemption defense and it appears that it investigated the state of the law on the issue. Stoddards argue that another defendant in the case (REECO) had filed a motion to dismiss on preemption grounds and Fidelity had only to wait until the court ruled on that motion. According to Stoddards, this is evidence of bad faith because Fidelity would not have incurred any additional expense, so it would lose nothing by waiting. This argument fails for two reasons. First, as Stoddards' counsel conceded at oral argument, the preemption issue had not been fully briefed; the claim against REECO settled before any opposition to the motion was filed. Second, REECO was not in the same position as Fidelity, so it cannot be said that a favorable ruling as to REECO would have been conclusive as to Fidelity. As a further indication of bad faith, Stoddards' counsel contends that he informed Fidelity's counsel of the preemption defense. This is irrelevant since Fidelity admits considering the defense and the case law Stoddards cited to them.

As further evidence that Fidelity's settlement was unreasonable and in bad faith, Stoddards argue that Fidelity did not gain anything by settling the claim for one-half the amount claimed because the other surety company provided the other half of the amount. Therefore, according to Stoddards, Fidelity failed to gain any advantage from its preemption defense. Fidelity ar-

gues that it feared it may be held liable for the full amount if West avoided liability and Fidelity was unsuccessful on its preemption defense. Again, the court finds that Stoddards have not provided sufficient evidence that settlement was unreasonable to withstand Fidelity's motion for summary judgment.

■ Stoddards argue that Fidelity is not entitled to indemnification because it did not provide notice of the settlement as required by Nevada law. *Palevac v. Mid Century,* 101 Nev. 835, 710 P.2d 1389 (1985). In *Palevac,* a surety paid a claimant on a bond and then sought indemnification pursuant to a written agreement. It appears that the payment was not made pursuant to court action, but rather on a claim directly to the surety. No notice was given to the indemnitor, and the court held that the surety could not seek reimbursement for voluntary payments made without notice to the indemnitor. *Id.* at 837, 710 P.2d 1389.

Two elements distinguish the present case from *Palevac.* First, under the terms of the bond, the Stoddards waived notice of actions taken pursuant to the bond. Second, Fidelity argues that Stoddards, as parties to the suit, had adequate notice of the claim. Fidelity has attached correspondence whereby Stoddards were informed, by copies of letters between Fidelity and the union, of negotiations and settlement proceedings. Stoddards' attorney contends that he was not notified of the settlement negotiations until settlement had been reached.

In *Burke v. Ripp,* the Fifth Circuit Court of Appeals found that an indemnitor had sufficient notice of the claim where the indemnitor was kept apprised of the settlement negotiations, even though the indemnitor did not participate in the negotiations and the final settlement offer was not submitted to him for approval. 619 F.2d 354 (5th Cir.1980). The court noted that an indemnitor must be given an opportunity to defend, but that this requirement is satisfied by "mere notice that an action against the indemnitee has been commenced." *Id.* at 358.

Here, Stoddards were named as third-party defendants in April 1989. In November 1989, Stoddards' counsel sent a letter to Fidelity, informing it of the possible preemption defense. In addition, Stoddards' counsel received copies of letters discussing possible settlement from the trustees' counsel to Fidelity in November 1989 and March 1990. Stoddards never requested that Fidelity litigate the claim, nor did they deposit collateral with Fidelity as the terms of the bond required if Stoddards wished to preserve their objection to settlement. As in *Burke,* the court finds that Stoddards had an opportunity to object to settlement and that the notice requirement has been met.

In *Burke,* indemnification was not based on a written agreement. The Hawaii Supreme Court has upheld an indemnification agreement that gives the indemnitee the right to settle without notice to the indemnitor. *Hawaiian Ins. & Guaranty Co. v. Higashi,* 67 Haw. 12, 675 P.2d 767 (1984). Further, that court held that if the agreement provides that evidence of payment is prima facie evidence of indemnitor's liability, the burden is on indemnitor to show that the settlement is not reasonable or was in bad faith. *Id.* 675 P.2d at 769.

In the present case, Stoddards signed an agreement waiving notice and giving Fidelity the right to settle unless they requested litigation. Stoddards had notice of the claim and have not provided any explanation as to why they did not request litigation. Because the notice received by Stoddards was sufficient, the court does not reach the issue of waiver.

The court has considered Stoddards' remaining arguments and finds them to be without merit. Therefore, Fidelity's motion for summary judgment (# 70) is GRANTED.

It is so ORDERED.